# DOOLEY *v.* HADDEN.
# HADDEN *v.* DOOLEY.

### APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 96, 99.　Argued November 9, 12, 1900.—Decided January 7, 1901.

In July, 1895, Harold F. Hadden and James E. S. Hadden brought an action in the New York Supreme Court for the city and county of New York, against the Natchaug Silk Company, Michael F. Dooley, personally and as receiver of the First National Bank of Willimantic, John A. Pangburn, and others, including William I. Buttling, sheriff of Kings County. The complaint alleged certain fraudulent and collusive proceedings between the Natchaug Silk Company, Dooley, receiver of the First National Bank of Willimantic, and John A. Pangburn, and, under a prayer of the bill, an injunction *pendente lite* was granted restraining the sheriff of Kings County from selling property of the silk company in his possession as sheriff upon executions against said company in favor of John A. Pangburn or Dooley, as receiver, and restraining Pangburn and Dooley from further proceedings at law against the property of the silk company in the State of New York. The action was removed to the Circuit Court of the United States for the Southern District of New York, and repeated motions to dissolve the temporary injunction were there made and denied, and the order of the Circuit Court denying the motions was, on appeal, affirmed by the Circuit Court of Appeals. Subsequently, the taking of testimony in the case having been closed, the defendants Dooley and Pangburn made another motion, upon the plenary proofs, to dissolve the injunction, and this motion was granted, after hearing, by Circuit Judge Lacombe, on November 27, 1896. The case came to final hearing in the Circuit Court, and resulted in the decree dismissing the bill on January 27, 1898. Upon appeal by the complainants the Circuit Court of Appeals reversed the decree in part and affirmed it in part. From this decree of the Circuit Court of Appeals the complainants appealed to this court, on the ground that the decree should have adjudged to the complainants priority of lien on all the goods in dispute; and the defendants appealed on the ground that the Circuit Court of Appeals erred in reversing the decree of the Circuit Court. The facts, as stated in the opinion of Circuit Judge Shipman, were substantially these: On April 23, 1895, the Natchaug Silk Company, a Connecticut corporation, owed the First National Bank of Willimantic, a national banking association located in Connecticut, over $300,000, and was entirely insolvent. In consequence of this indebtedness the bank suspended, and Michael F. Dooley

was appointed its receiver on April 26, 1895, by the Comptroller of the Currency. On April 23, 1895, J. D. Chaffee, as president and general manager of the silk company, in consideration of and to reduce this indebtedness, sold to the bank 107 cases of manufactured silk, the value of which cannot be accurately ascertained, but which is said to be about $20,000. They were then, or had been, shipped to New York, where they were subsequently taken by Dooley into his possession, and removed to Brooklyn. On May 8, 1895, he, as receiver, attached the goods by attachment, which was subsequently dissolved. On May 30, 1895, he sold and assigned to Pangburn, who is a resident of the State of New York, notes of the silk company, not paid by this transfer, amounting to about $67,000, for the nominal consideration of $200, which sale Dooley made by virtue of an order of the Circuit Court of the Southern District of New York, with the approval of the Comptroller of the Currency, for the purpose of enabling a suit to be brought in the State of New York, by a resident of that State, in his own name, against the silk company, a foreign corporation. Pangburn did bring suit on said notes against the silk company, on June 1, 1895, in the proper state court, and obtained an order of attachment, a judgment for the full amount thereof, and an execution which was levied by the sheriff of King's County upon these cases of silk. The sale was stopped by this injunction order. On June 6, 1895, the complainants, who are creditors of the silk company to the amount of about $22,000, brought suit against it in a court of the State of New York, and obtained an order of attachment under which the sheriff of Kings County levied an attachment upon the same silk. On July 2, 1895, the complainants brought a bill in equity, upon which the injunction order in question in this suit was issued. *Held*, that the decree of the Circuit Court of Appeals, in so far as it reversed the decree of the Circuit Court, should be reversed, and the decree of the Circuit Court, dismissing the bill of complaint, should be affirmed.

In July, 1895, Harold F. Hadden and James E. S. Hadden brought an action in the New York Supreme Court for the city and county of New York, against the Natchaug Silk Company, Michael F. Dooley, personally and as receiver of the First National Bank of Willimantic, John A. Pangburn, and others, including William I. Buttling, sheriff of Kings County. The complaint alleged certain fraudulent and collusive proceedings between the Natchaug Silk Company, Dooley, receiver of the First National Bank of Willimantic, and John A. Pangburn; and, under a prayer of the bill, an injunction *pendente lite* was granted restraining the sheriff of Kings County from selling property of the silk company in his possession as sheriff upon executions against said company in favor of John A. Pangburn

or Dooley, as receiver, and restraining Pangburn and Dooley from further proceedings at law against the property of the silk company in the State of New York.

The action was removed to the Circuit Court of the United States for the Southern District of New York, and repeated motions to dissolve the temporary injunction were made and denied, and the order of the Circuit Court denying the motions was, on appeal, affirmed by the Circuit Court of Appeals. 38 U. S. App. 651.

Subsequently, the taking of testimony in the case having been closed, the defendants Dooley and Pangburn made another motion, upon the plenary proofs, to dissolve the injunction, and this motion was granted, after hearing, by Circuit Judge Lacombe, on November 27, 1896.

The case came to final hearing in the Circuit Court, and resulted in a decree dismissing the bill on January 27, 1898.

Upon appeal by the complainants the Circuit Court of Appeals reversed the decree in part and affirmed it in part. From this decree of the Circuit Court of Appeals the complainants have appealed to this court, on the ground that the decree should have adjudged to the complainants priority of lien on all the goods in dispute; and the defendants have appealed on the ground that the Circuit Court of Appeals erred in reversing the decree of the Circuit Court.

The facts, as stated in the opinion of Circuit Judge Shipman, were substantially these:

On April 23, 1895, the Natchaug Silk Company, a Connecticut corporation, owed the First National Bank of Willimantic, a national banking association, located in Connecticut, over $300,000, and was entirely insolvent. In consequence of this indebtedness the bank suspended, and Michael F. Dooley was appointed its receiver on April 26, 1895, by the Comptroller of the Currency. On April 23, 1895, J. D. Chaffee, as president and general manager of the silk company, in consideration of and to reduce this indebtedness, sold to the bank 107 cases of manufactured silk, the value of which cannot be accurately ascertained, but which is said to be about $20,000. They were then or had been shipped to New York city, where they were

subsequently taken by Dooley into his possession and removed to Brooklyn. On May 8, 1895, he, as receiver, attached the goods by an attachment, which was subsequently dissolved. On May 30, 1895, he sold and assigned to Pangburn, who is a resident of the State of New York, notes of the silk company, not paid by this transfer, amounting to about $67,000, for the nominal consideration of $200, which sale Dooley made by virtue of an order of the Circuit Court of the Southern District of New York, with the approval of the Comptroller of the Currency, for the purpose of enabling a suit to be brought in the State of New York, by a resident of that State, in his own name, against the silk company, a foreign corporation. Pangburn did bring suit on said notes against the silk company on June 1, 1895, in the proper state court, obtained an order of attachment, a judgment for the full amount thereof and an execution, which was levied by the sheriff of Kings County upon these cases of silk. The sale was stopped by this injunction order.

On June 6, 1895, the complainants, who are creditors of the silk company to the amount of about $22,000, brought suit against it, in a court of the State of New York, and obtained an order of attachment, under which the sheriff of Kings County levied an attachment upon the same silk.

On July 2, 1895, the complainants brought a bill in equity, upon which the injunction order now in question was issued against Dooley, Pangburn, the silk company and others, alleging that all their acts in connection with the silk were fraudulent, and praying for relief by injunction and otherwise.

It thus appears that the bank and the complainants are creditors of the silk company, and that Dooley, as receiver of the bank, and the complainants are each striving to obtain a hold upon the silk as a means of payment for their respective debts.

*Mr. William B. Putney* and *Mr. Lockwood Honoré* for the Haddens. *Mr. Henry B. Twombly* was on their brief.

*Mr. Edward Winslow Paige* for Dooley.

MR. JUSTICE SHIRAS, after making the above statement, delivered the opinion of the court.

Whether Chaffee, as president and general manager of the silk company, had authority to sell a large portion of the personal property of the company to one of its creditors in part payment of its debt, and whether his action, if regarded as unauthorized, was ratified by the directors of the company, were questions much discussed in the courts below, and which occupy a large part of the briefs of counsel filed in this court, but which, in the view that we take of the case, need not be considered by us.

In both the Circuit Court and the Circuit Court of Appeals it was held, upon all the facts, that the notes of the silk company held by Dooley, as receiver of the First National Bank of Willimantic, were valid obligations of the silk company; that the sale of these notes by Dooley, as receiver, to Pangburn, under the order of the Circuit Court, with the approval of the Comptroller of the Currency, vested a good title in Pangburn, and that the judgment therein obtained, on June 27, 1895, in the Supreme Court of the State of New York, in favor of Pangburn, was a valid judgment.

What remained to consider was the validity of the warrant of attachment issued and served in favor of Pangburn on June 3, 1895, and of the execution levied on the attached property on June 27, 1895, as against the attachment issued on June 6, 1895, upon the property obtained by the complainants Hadden, under their suit brought in the Supreme Court of the State of New York.

The Circuit Court was of opinion that the validity of the notes, of their sale to Pangburn, and of the judgment thereon, having been established, there was nothing in the evidence on behalf of the Haddens, as subsequent attaching creditors, which would justify the court in postponing the prior attachments and judgment of Pangburn, in whole or in part, and accordingly, on January 28, 1898, that court rendered a decree on the merits of the case, dismissing the bill of complaint.

As already stated, the court of appeals concurred with the

Circuit Court in holding that the notes and their sale to Pang-burn were valid, and that his judgment and attachment of the goods were valid as against the silk company, but, for reasons which we shall presently state and consider, that court was of opinion that while, as to some of the goods, the attachment and execution of Pangburn could not be disturbed, yet, as to certain other parcels of the goods, the attachment of the complainants was equitably entitled to preference over that of Pangburn, and accordingly rendered the decree from which both parties have appealed.

The facts upon which the Court of Appeals proceeded were not in dispute, and were substantially as follows :·

The goods in question consisted of 107 cases of silk. They had been shipped at different times, in April, 1895, to D. E. Adams & Company, 77 Greene street, New York. Adams was a silk merchant who occupied a store at that number, and from him the silk company leased a part of the store, where it trans-acted its New York business, through John H. Thompson, who also was an employé of Adams, its manager. On April 15, 16, 17 and 19, Fenton, the secretary of the silk company, by direc-tion of Chaffee, sent by railroad forty-three cases of silk goods directed to D. E. Adams & Company. On April 22, Chaffee went to Boston and sent all the silk company's goods in the Boston office, being eighteen cases and a package, to Adams & Company. There were forty-five cases of the silk company's goods in the Adams store before these April shipments from Willimantic and Boston. On May 2, 1895, the sixty-two boxes of goods shipped from Willimantic and Boston to Greene street were removed by Mr. Paige, counsel for Dooley, receiver, and were stored in Paige's name in the storehouse of F. C. Linde & Company, in New York city, and on May 18, 1895, were re-moved by Mr. Paige to the Brooklyn Storage Warehouse Com-pany in Brooklyn, and were there stored in his name. On May 18, Paige, as attorney for Dooley, as receiver, commenced suit against the silk company in the Supreme Court of New York, and attached the sixty-two cases in the Brooklyn ware-house as the goods of the silk company. On May 25, forty-five boxes of silk goods were removed from the Greene street store

by Paige's orders and placed in his name in the Brooklyn warehouse, and soon after were attached by his direction in the Dooley suit. On May 21, Hadden & Company, the complainants, brought suit in the Supreme Court of New York against the silk company to recover a debt of some twenty-three thousand dollars. A warrant of attachment was served on Thompson, but the sheriff refused to take the goods in the Greene street store until a bond of indemnity was given to protect him. This was subsequently furnished, but in the mean time, on May 25, the goods went to Brooklyn. On June 6, 1895, the goods in the Brooklyn warehouse were attached by Hadden & Company, who obtained judgment against the silk company on June 26 for $22,948, and execution was issued therefor, and levied on the goods in the Brooklyn warehouse. The Dooley attachment was vacated on June 27, 1895, on the application of Hadden & Company, because the suit of a non-resident against a foreign corporation was forbidden by section 1780 of the Code of Civil Procedure. In the mean time, as previously stated, Pangburn, in his suit against the silk company, had issued an attachment on June 1, 1895, which was levied on June 3 on the goods in Brooklyn, and had obtained on June 25, 1895, a judgment for $67,116, and an execution was levied upon the attached property.

In this state of facts Circuit Judge Shipman reasoned as follows (63 U. S. App. 173, 187):

"The 107 cases which were originally in the care of Thompson in Greene street, as the bank's goods, went to Brooklyn, although the exact number which went there on May 25 is not clearly stated in the record. While creditors were inquiring with a sheriff at Greene street in regard to these goods, for the purpose of attachment, they were removed from place to place by the order of Dooley's counsel, were stored in his name and were attached in the suit of the bank against the silk company by his direction. The attempted attachment by the complainants of the forty-five cases in Greene street was prevented by their removal to Brooklyn. The counsel for Dooley distrusted the validity of the bills of sale [made by the silk company's president and manager to the bank,] and desired to secure the

bank by aid of legal proceedings. The receiver of the bank had an equal right with other creditors to take legal steps to secure its debt, but had no right to take unfair steps. The removal of the forty-five cases to Brooklyn and the storage of the property in the name of Mr. Paige, so that it could be in a measure secreted for the purpose of preventing the complainants from completing their attachment of these cases, was an unfair step. Hadden & Company first appeared as attaching creditors on May 21. At this time sixty-two boxes had been attached in the Dooley suit and forty-five were in Greene street. The removal of these boxes after May 21 to prevent the completion of the Hadden & Company attachment was an unfair advantage in this race between creditors, and compels a court of equity to declare that the complainants should have a prior lien upon the cases which were in Greene street when the sheriff's bond was being prepared. There is no apparent equity in giving priority to their attachment upon 107 cases, but they are entitled only to a prior lien upon the goods which they attempted to attach, an attempt the success of which was foiled by a removal of the goods."

Circuit Judge Wallace filed a concurring opinion, in which occur the following observations (p. 188):

"The case resolves itself into a question of priority of liens between judgment creditors of the Natchaug Silk Company having executions levied upon 107 boxes of silk in the storehouse of the Brooklyn Storage & Warehouse Company, and its decision depends upon the priority of the liens acquired by the attachments in the actions in which the judgments were recovered. . . . Of these goods forty-five boxes were removed by Dooley, the receiver of the Willimantic Bank, and stored in Brooklyn clandestinely for the purpose of defeating a levy upon them under the attachment in the complainants' action, until Dooley could procure an attachment and levy upon them through the instrumentality of Pangburn. A creditor having property of a debtor in his possession or under his control cannot thus defeat the rights of another creditor who has been in the mean time using proper diligence to attach it. A race of diligence between creditors is legitimate, but it cannot be won

by the abuse of legal remedies. I cannot doubt that the complainants could recover of Dooley in an action on the case for his acts in frustrating their attempted levy. A court of equity under such circumstances should postpone his lien to theirs. Because the attachment in the Pangburn suit was valid, its lien cannot be displaced in favor of the complainants as respects the goods removed before their attachment was obtained. . . . . The theory that the lien of Dooley, as receiver of the bank, should be postponed to that of the complainants because of a conspiracy between the bank and the silk company to defraud the complainants and other creditors is too nebulous upon the proofs for practical consideration."

As the efforts of the complainants to defeat the claims of Dooley, receiver, and of Pangburn on the grounds that the notes of the silk company held by the Willimantic bank were invalid, and that their liens by attachment or execution or otherwise were fraudulent and void because of a conspiracy between the bank and the silk company to defraud the complainants and other creditors, wholly failed in both the courts below, we do not consider it necessary to review the voluminous evidence upon which those courts acted, but think it sufficient to say that we perceive no error in their conclusions on those subjects.

It remains for us to consider whether the Circuit Court of Appeals was right in holding that the attachment and levy of Pangburn, on the forty-five boxes of silk, should be postponed in favor of the subsequent levy of the complainants.

It may well be questioned whether, upon the pleadings, that was an open question.

The only allegation touching the custody of the goods and their removal from one place to another contained in the original bill was as follows:

"That on the 23d day of April, Chaffee (the president and manager of the silk company) illegally and fraudulently, and without any authority of the board of directors of said Natchaug Silk Company, and with full knowledge of the insolvency of the company as aforesaid, executed a paper purporting to be a bill of sale of all the goods belonging to the Natchaug Silk Company, in New York city, to said Michael F. Dooley, re-

ceiver of the First National Bank of Willimantic; that said, assignment or transfer was wholly without consideration; it was made to hinder, delay and defraud creditors, and particularly these plaintiffs, and was and is wholly illegal and void.

"That said Dooley, without lawful right or title, took possession of said goods and secretly removed part thereof first, to a storehouse in New York city, and later to the storehouse of the Brooklyn Storage and Warehouse Company in Brooklyn, in the county of Kings; that on the 25th day of May said Dooley secretly removed the remaining boxes of silks to the said storehouse of the Brooklyn Storage and Warehouse Company, where all of said silks, to the number of one hundred and seven boxes, were placed in the name of the attorney of said Dooley."

As those portions of the allegations that assert that there was no consideration for the sale and transfer of the goods to Dooley, receiver, and that it was made to hinder and defraud creditors, have been eliminated from consideration, there remains only the allegation that Dooley took possession of the goods and secretly removed them to the Brooklyn storehouse and there placed them in the name of his attorney.

As the purpose and theory of the bill was to defeat the Pangburn judgment and execution because without consideration and fraudulent as against creditors, it is evident that the allegations respecting Dooley's possession and removal of the goods had reference to the alleged fraudulent scheme, and cannot be regarded as presenting or raising any issue of misconduct on the part of Dooley or Pangburn in pursuing lawful remedies against goods of the silk company in the possession of Dooley and his attorney.

The original bill was filed on July 2, 1895. Subsequently, on January 14, 1897, after all the proofs were in, the complainants, with leave of court, filed an amended bill of complaint, containing more particular statements as to the alleged fraud and conspiracy between the silk company and the bank, but omitting altogether any allegation as to the removal by Dooley of the goods from New York city to the storehouse in Brooklyn, and containing no allegation of fraud or unfairness on the

part of Dooley or his attorney in the management of the Pang-burn attachment and execution. Nor does it appear in the several opinions of the Circuit Court, filed from time to time, during the contest in that court, that any specific charge was made or relied on that there had been any unfair or iniquitous practice resorted to on the part of Dooley or Pangburn in the removal of the goods from New York city to Brooklyn, with a view to obtain an unjust advantage.

But, passing by the fact that neither the original nor the amended bill contained apt allegations to make an issue as to unfair or improper conduct by Dooley or Pangburn in the prosecution of the attachment and execution under the Pangburn judgment, and assuming that the complainants had made such allegations, we are unable to concur with the judges of the Circuit Court of Appeals in thinking that the facts, shown by this record, disclose a case of practice of a character to warrant the courts to displace the priority of the Pangburn attachment and execution in favor of those of the complainants.

The essential facts were that the goods were in the possession of Dooley in the city of New York. They had come into his possession by virtue of a formal sale made by Chaffee, the president and manager of the silk company, to Dooley, as receiver of the Willimantic National Bank. Such sale was, indeed, subsequently, in the proceedings in this suit, held to have been ineffectual to pass title to the goods, not because the bank was not a *bona fide* creditor of the silk company, but because the Circuit Court of Appeals was of opinion that Chaffee was without authority, as president and manager, to make such sale. Hence, although Dooley's possession could not avail to protect the goods in his possession from attachment and seizure by creditors of the silk company, yet such possession cannot be regarded as fraudulent or collusive in such a sense as to deprive Dooley, as receiver of the bank, of a right to take legal proceedings, like any other creditor, against the goods. Suppose it be conceded that Dooley was aware, or had reason to apprehend, that there were other creditors of the silk company, who would pursue remedies against the goods in his hand. Such knowledge or apprehension would not devolve upon him, or

upon his attorney, any fiduciary relation towards such creditors. It did not become his duty to inform them of the whereabouts of the goods, in order that they might precede him in the race of diligence. His primary duty was to the Willimantic National Bank and its creditors, and while the law will not permit him to resort to fraudulent devices or to false representations in order to delay or deceive other creditors, we are unable to agree with the learned judges of the Circuit Court of Appeals in thinking that the removing of these goods from New York city to the Brooklyn warehouse and there storing them in the name of a third person, while awaiting the maturity of legal proceedings, invalidated Pangburn's attachment and execution. The learned judges, indeed, speak of Dooley's conduct as being "inequitable" and "unfair," as against the complainants. But such epithets are of very uncertain legal significance. Where courts are dealing with parties between whom exists a fiduciary relation, or where, if the parties are on an equal footing, false representations are made by one party, in circumstances which give the other a right to rely upon them, the courts may rightfully use their power to promote fair dealing, and to defeat an abuse of legal remedies. It is not pretended, in the present case, that Dooley, Pangburn, or their attorney, had any transactions with the complainants, or made any false representations or statements to them. The utmost that can be said is, that Dooley, being in actual possession of the goods under a claim of title to them, which claim was legally unfounded, placed them in the nominal possession of his attorney in a place known only to himself, and was thus enabled to secure a levy on them prior in law to that of the complainants. We do not think that a court of equity in such circumstances should postpone his lien to theirs.

*The decree of the Circuit Court of Appeals, in so far as it reversed the decree of the Circuit Court, is reversed, and the decree of the Circuit Court, dismissing the bill of complaint, is affirmed.*