### W. A. BUNN v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 13 October, 1915.)

**1. Master and Servant—Duty of Master—Negligence—Safety of Employee—Ordinary Tools and Methods—Anticipation of Injury.**

The requirements that the master, in the exercise of ordinary care, should provide for his servant a reasonably safe place to work, and furnish him with tools and appliances safe and suitable for the work in which he is engaged, chiefly apply in case of machinery more or less complicated, and more especially when driven by mechanical power, and not always to the use of everyday tools or to ordinary everyday conditions requiring no special care, preparation or prevision, where the defects are readily observable, and there is no reason to suppose that the injury complained of would result.

**2. Same—Railroads—Repairing Cars—Inspection.**

Where, in an action by an employee of a railroad company to recover damages for a personal injury, the evidence tended only to show that the plaintiff and another contracted by piece work to repair cars marked for repair by the defendant's inspector, without supervision by the defendant; that the plaintiff and his coemployee were skilled and experienced in that kind of work; that they were to replace rotten parts of or certain timbers of the car and had loosened the weather-boarding on one side thereof, and this side fell upon the plaintiff and injured him when he was taking out the last nails and when his coemployee had gone to get hands to lift down the side of the car, by reason of some rotten uprights holding the car sides, which had not been discovered: *Held*, a judgment of nonsuit was proper, no evidence of actionable negligence having been shown, the defects complained of being more readily discoverable by the plaintiff, and not within the reasonable anticipation of the defendant.

**3. Same—Nonsuit.**

In this case, it appearing that the plaintiff has shown no evidence of actionable negligence on the part of the defendant railroad for an injury received by the side of the car which he, an experienced workman, was

working on, falling upon him, it is further held that the plaintiff's conten-
tion is unavailing, upon the question of nonsuit, that he would have been
in a position to have avoided the injury except for débris left there about
18 inches high from the ground, it appearing that the débris was usually
removed by the defendant's employees after the cars had been repaired,
or in cleaning up the yard, and requested in this instance only for the
purpose of putting a new sill in the car, and not as a matter of plaintiff's
safety; and that the injury would not thereby have been prevented under
the surrounding conditions, had the débris been removed, or that its pres-
ence or absence would naturally increase the danger or avoid the injury,
if the work had been done in a proper way or with reasonable care.

**4. Railroads—Master and Servant—Contributory Negligence—Damages.**
Under our statute, Laws of 1913, chapter 6, the question of contributory
negligence, in an action by an employee of a railroad against the company
to recover damages for a personal injury, is only significant on the issue
of damages, and does not afford the defendant a complete defense.

APPEAL by both parties from *Carter, J.,* at the June Term, 1915, of
EDGECOMBE.

Civil action to recover damages for personal injuries caused by al-
leged negligence of defendant company.

The facts in evidence tended to show that, in June, 1913, while plain-
tiff and another mechanic associated with him in the work, one V. C.
Daniel, were engaged in repairing a box car on a repair track in South
Rocky Mount, the side of the car where plaintiff was then at work fell
over on him, causing serious and permanent injuries; that plaintiff
and McDaniel were both experienced men, who had done quite an
amount of work of this kind, and where doing this as employees of the
company by the piece or contract; that the ordinary methods of pro-
cedure in doing this work was that an inspector, in this case one J. G.
Armstrong, looked over the car and marked the parts that he con-
demned, and the plaintiffs or other workmen similarly engaged were
then given the work to do and were left to do it in their own way, with-
out further supervision or inspection so far as the methods of the work
were concerned.

In case of the present car, the inspector condemned different parts of
the car, and, among other things,. told plaintiff and his associate to re-
move the top, and marked one of the side sills at one place with a chalk
mark, indicating that same was to be spliced, and on the other side,
having bared the sill at the end and also near the door and discovered
it was rotten, marked it at each end to indicate that it was condemned
and was to be entirely removed. The inspector gave directions that
both sides of the car were to be saved, because they were good, plaintiff
testifying at one place that the inspector said to save this side if they
could. The witness V. C. McDaniel, testifying for plaintiff, said that
during the progress of the work he discovered that the ends of the car
were rotten, and he sent for the inspector about this, and was told to

take the ends out also; that the plaintiff and his associate entered on the work, removed the top and ends of the car, prepared the splice for the sill on one side, plaintiff helping McDaniel in this and McDaniel, about 3 o'clock p. m. on Tuesday, the second day of their work, started to the mill to get hands sufficient to help let down the side of the car on which plaintiff had been working, that being the side where the entire sill was to be removed and, meantime, plaintiff resumed and continued on the work of back-setting the nails at the base of the car, which held the weatherboarding to the sill, this being done by driving the nail with a punch through into the sill and thus loosening the weatherboarding, this being done so that when McDaniel returned with the hands, they could lay the side over on the body of the car; that plaintiff had about completed this particular work or done the better portion of it and, coming to a nail that had not been entirely driven up, but had been bent around the weatherboarding in some way, and plaintiff prized the weatherboarding loose where the bent nail was and, as he did so, it gave way and the side of the car fell over on plaintiff, causing the injuries as stated; that plaintiff was sitting down at the time, the rubbish or débris thrown out in the progress of the work being along and around the car and making this the more convenient position in which to do this part of the work.

It further appeared that this rubbish, as it was torn away, was lying around the car, being at the point where plaintiff was working, 12 to 18 inches in depth, and plaintiff testified that, but for this rubbish, he would have been standing while he worked and, though bent over some, was satisfied that he could have escaped but for this rubbish; that the base line of the car, where the nails were being driven in, was three feet from the ground, and he could have done the work very slightly bent.

McDaniel testified that the base line was below the plaintiff's knees, and he didn't see how plaintiff could have escaped in any event. It was also shown that there was a gang of hands around there whose duty it was to clear off the yards, usually, after the work was done; that at dinner time on Tuesday, the second day of the work, McDaniel told the foreman of this gang to have the rubbish removed, giving as a reason that they would have to repair the sill alongside of the car, and the foreman replied that he would get to it as soon as he could, but just then he had no racks or proper place ready for it.

Both plaintiff and McDaniel testified that the cause of the car falling when it did was that the standards of the car, the upright posts mortised into this sill, were also rotten at the ends, and that, notwithstanding the weatherboarding had been loosened at the bottom and the sill was rotten, that the side of the car would have held if these standards had not been also rotten.

In apt time there was motion to nonsuit by defendant; motion overruled and defendant excepted.

The court was also asked to instruct the jury that, upon the entire testimony, if believed and accepted by the jury, this issue as to defendant's negligence should be answered "No." Refused, and defendant excepted.

The court, ruling that there was no negligence shown by reason of any conduct of the inspector, Armstrong, submitted the case to the jury on the question of negligence by reason of failure to clear away the rubbish. Verdict and judgment for plaintiff and defendant excepted and appealed.

H. A. Gilliam, J. H. Pou for plaintiff.
F. S. Spruill for defendant.
}  Defendant's appeal.

H. A. Gilliam, J. H. Pou, J. M. Norfleet,
    J. W. Keel for plaintiff.
F. S. Spruill for defendant.
}  Plaintiff's appeal.

HOKE, J., after stating the case: We have carefully considered the case presented in the record, and are of opinion that no actionable wrong has been established against defendant company. In several recent decisions of the Court it has been held that, while an employer is required, in the exercise of ordinary care, to provide for his employee a reasonably safe place to work, and furnish him with tools and appliances safe and suitable for the work in which he is engaged, the principle is chiefly insistent in case of "machinery more or less complicated, and more especially when driven by mechanical power," and does not always apply to "the use of ordinary everyday tools, nor to ordinary everyday conditions requiring no special care, preparation or prevision, where the defects are readily observable, and where there was no good reason to suppose that the injury complained of would result." *House v. R. R.,* 152 N. C., p. 397; *Mercer v. R. R.,* 154 N. C., p. 399; *Simpson v. R. R.,* 154 N. C., p. 51; *Rumbley v. R. R.,* 153 N. C., p. 457; *Brookshire v. Electric Co.,* 152 N. C., p. 669; *Dunn v. R. R.,* 151 N. C., p. 313; *Martin v. Manufacturing Co.,* 128 N. C., p. 264.

In the present case there was nothing specially complicated or threatening in the work that these employees were given to do: the taking out the sides and making the indicated repairs to an ordinary box car, stationary and in proper position on the repair track. True, the car had been inspected by another employee of the company, one J. G. Armstrong, but this was with a view of ascertaining the extent of the repairs required and the amount of work to be done by the company, and there is nothing in the testimony or attendant circumstances which shows or tends to show that the examination had any reference or natu-

ral connection with the safety of employees to be engaged in the work. On the contrary, it appears that the inspector, having given directions that the top of the car should be removed and a sill spliced on one side and entirely removed on the other because it was rotten, plaintiff and another, two experienced men who had done much work of this character, were sent to make the needed repairs. They were left entirely to their own methods and were in much better position to ascertain the true condition of the car than any one connected with it. See *Lane v. R. R.,* 154 N. C., p. 91; and *White v. Power Co.,* 151 N. C., p. 356. In confirmation of this view, we find from the evidence that McDaniel, plaintiff's associate, having ascertained, in the progress of the work, that the ends of the car were also rotten, notified the inspector of that fact, and was directed to remove the ends, which was done. And so, in reference to the débris or rubbish lying near and around the car, and on which the plaintiff was sitting when he was injured, there is nothing in the evidence to show that its presence or absence would naturally increase the danger or was likely to cause an injury in case the work was done in a proper way and with reasonable care.

True, there was a gang of hands there, charged with the duty of removing rubbish, but this was with the general purpose of keeping the yard clear, and was usually done when the job was completed, and there is nothing to show that the duty of removing the rubbish had any tendency to increase or diminish the ordinary hazard of the work when properly done. Accordingly, we find that when McDaniel told the foreman of the said gang, on Tuesday at midday, to remove the rubbish, he gave as his reason that they needed a place to prepare the new sill. It was not at all with any view of making the work any more safe. If this rubbish had been removed, the plaintiff would have been then necessarily bent over doing his work, and there is evidence to show that in all probability he would have been injured whether the rubbish had been removed or not. But we are not condemning the conduct of plaintiff as tending to establish the fact of contributory negligence on his part. In that case, the question under our present statute, Laws 1913, ch. 6, is only significant on the issue of damages, but, under the authorities cited, we must hold that the case is properly made to rest on the proposition that, in the case of a box car, stationary on the yard, with two experienced and capable workmen sent to repair it, as indicated in the testimony, these employees being left entirely to their own methods of doing the work and with present power to call for any help that might be required, there was nothing to show that any injury to these men or either of them was likely to occur, and, therefore, no breach of legal duty on the part of the company that could be fairly considered as the proximate cause of plaintiff's hurt.

The case in our reports more nearly resembling the one we are considering is that of *Rumbley v. R. R., supra.* In *Rumbley's case* the facts apposite and the decision thereon are stated in the opinion of the Court as follows: "We fail to perceive any ground upon which this recovery can be sustained. The evidence tended to show that on 23 June, 1908, plaintiff and another carpenter were directed to tear down an old shed, near the Salisbury depot, and had been engaged on the work several days, and on the day in question they were knocking the rafters loose and standing on one of the joists of the shed, which were placed horizontally beneath, at intervals of two or three feet. While plaintiff was standing on one of these joists, knocking loose the rafters above, it gave way and fell to the ground, causing the injury complained of. The cause of the joist giving way is not very definitely described, but it seems to have been very insecurely fastened at the ends. The work that plaintiff was given to do was simple in operation, well within his experience and training, and he was left to select his own methods of doing it. On the facts in evidence, there has been no breach of legal duty established on the part of defendant company, and under several recent decisions of this Court the motion for nonsuit should have been allowed. *House v. R. R.,* 152 N. C., p. 398; *Brookshire v. Electric Co.,.* 152 N. C., p. 669; *Dunn v. R. R.,* 151 N. C., p. 313."

We regard this case and the principle upon which it rests as decisive of the present appeal, and are of opinion that the motion for nonsuit should have been allowed.

Reversed.

### PLAINTIFF'S APPEAL.

HOKE, J. In this case, the court below, being of opinion that there was no negligence imputable to the company in reference to the conduct of the inspector, Armstrong, made several rulings in furtherance of that position, to which plaintiff excepted and appealed from the judgment as rendered. Having held, on defendant's appeal, that plaintiff was not entitled to recover in any aspect of the testimony, the specified rulings of his Honor adverse to plaintiff have become immaterial, and the judgment is, therefore, affirmed.

No error.