Civil action to recover damages for physical injuries arising from alleged negligence of the defendant.
There was evidence on part of plaintiff tending to show that plaintiff, a young man 23 years of age, was working as a craneman for a dredging company near Lake Drummond. Plaintiff had been (89) working for defendant about three months when he was hurt.
The dredge which was being used had what is known as a crane and dipper handle, and at the end of the dipper handle a "dipper," which is made of iron and is composed of several parts known as the "lip" and "ears." These parts are fastened together by means of bolts, and in the course of using the dipper these bolts became loose and fell out. At the time in question five or six of these bolts were out and the "ears" were out of line with the remainder of the dipper, and in order that the bolts might be driven in place and the parts of the dipper fastened together, it was necessary to get the holes in the ears in line with the holes in the dipper (that is, to "line up" the two sets of holes). The parts of the dipper were too heavy to raise until the holes were in line, and it was necessary to drive a pin, known as a "drift pin," through one of the holes in the "ears" and the corresponding hole in the dipper until bolts could be inserted and fastened in the remaining holes. Drift pins are pieces of steel without handles, of varying lengths and larger at one end than at the other, and are driven in the holes with sledge hammers. One workingman supervises and holds the pin while another does the driving. The plaintiff in the case at bar was holding the drift pin and one Kirkman was doing the driving. Kirkman was driving the pin and plaintiff holding the same. He backed, and was looking to see if the holes were lined up, when Kirkman struck it another lick, and a piece of steel from the drift pin flew off and struck plaintiff in the left eye and put it entirely out.
It further appeared that J. C. Dodd was superintendent in charge of the work; that next in charge was C. R. Jellison, the foreman, and, when the superintendent was temporarily away, as he was on this occasion, the foreman had full charge; that Mr. Halleck, termed the runner, was in charge of this machine and this shift, or relay of hands, which included plaintiff; that he had control of plaintiff in this matter and had directed him to do this particular work in which he was then engaged.
Speaking to this, plaintiff, among other things, testified as follows: "Mr. Halleck, dredge runner, told me to put the bolts in the dipper. I was under Mr. Halleck. I do not say that he could discharge me, but he could have me discharged if he reported me.
"Halleck was in charge of the hands of this particular machine. *Page 133 
"Mr. Halleck was in charge of the shift on which I was working. I was supposed to do whatever Mr. Halleck told me to do. Mr. J. G. Dodd hired me. I was working under Mr. Halleck at the time in question. Kirkman was helping me.
"I had orders from Mr. Halleck to put these bolts in, and for Kirkman to help me. He was doing the same kind of work. We were both under Mr. Halleck.
"We had a drift pin, hammer, and bolts to work with; had to (90) put bolts in the holes; the drift pin was used for lining up the holes. Kirkman was doing the driving. I was holding the drift pin for Kirkman to drive. Kirkman was striking the drift pin and drove it until it got so I could turn it loose. Then I backed back, and was looking to see if the holes were lined up. It was a part of my duty to look and see if the holes were lined up so the drift pin would go in."
It further appeared that the tools of the company were in bad shape; that the pin, which was the only one they had for this work, was a piece of steel about 15 inches long, 7/8 of an inch at the larger end and tapering to 1/2 inch; that it had been used for the three months witness was on the work; was "battered and burred at the end" and, about a month before, it had broken off; that it had not been used much since, but did go for a "short drift."
One T. G. Castine, company employee and witness for plaintiff, among other things, testified: "I saw the tools the company had there to work with; their condition was very bad; for instance, the drift pin was burred very badly; the head was battered and in bad shape; slivers would fly off."
Plaintiff himself testified further: "I told Mr. Jellison, the foreman, that all of the tools were in bad shape; that we did not have anything fit to work with. That was two or three weeks before I got hurt. I do not remember him getting any drifts or punches, but he did get some wrenches."
Upon these, the controlling features of the testimony making in favor of plaintiff's claim, on motion made in apt time, there was judgment of nonsuit, and plaintiff excepted and appealed.
In House v. R. R., 152 N.C. pp. 397 and 398, where an employee had had her arm and hand cut in the effort to raise a car window which had become tightened by effects of weather and otherwise, the Court, in denying recovery, among other things, said: "We have repeatedly decided that an employer of labor is required to provide *Page 134 
for his employees a reasonably safe place to work, and to supply them with implements and appliances reasonably safe and suitable for the work in which they were engaged. As stated in Hicks v. Mfg. Co.,138 N.C. 319-325, and other cases of like import, the principle more readily obtains in the case of `machinery more or less complicated, and more especially when driven by mechanical power,' and does not, as a rule, apply to the use of ordinary everyday tools, nor to ordinary everyday conditions, requiring no special care, preparation, or provision, (91) where the defects are readily observable, and where there was no good reason to suppose that the injury complained of would result."
In thus recognizing the distinction in the degree of care in regard to simple tools and ordinary conditions and those more complex, the Court did not at all intend to hold that an employer was released from all responsibility concerning such implements.
Referring to the terms used, it will be noted that the distinction is approved in case of simple tools where "no special care, preparation, or prevision is required; where the defects are readily observable, and where there is no good reason to suppose that the injury complained of would result."
In seeking a basic principle upon which the position could generally and properly be made to rest, it was further said that, under conditions suggested, the element of proximate cause was usually lacking, an essential feature of which is said to be that it is a cause which produces the harmful result in continuous sequence and one from which a man of ordinary prudence could foresee that such result was probable under all the facts as they existed. Ramsbottom v. R. R., 138 N.C. 39; Brewster v. ElizabethCity, 137 N.C. 392.
In the recent case of Bunn v. R. R., 169 N.C. 648, the position was approved and applied where the company had sent two capable and experienced workmen to repair a box car which was stationary on the railroad yards, having been placed there for the purpose. In the prosecution of the work, one of them having back-set all the nails into the sill which held the side of the car upright in its then condition, driving them through into the sill, the side fell over on him, causing serious injuries. The men had been left to their own methods of doing this work, and recovery was denied, the Court holding that, on the facts presented, "two experienced and capable workmen sent to repair a box car stationary on defendant's yard, left entirely to their own methods, with present power to call for any help that might be required, that there was nothing to show that an injury to these men or either of them was likely to occur, and, therefore, no breach of legal duty had been established which could be considered as the proximate cause of *Page 135 
plaintiff's hurt." And there are numerous cases in this jurisdiction where the same position was approved, and usually for like reason. See Bradley v.Coal Co., 169 N.C. 255, where a wire snapped that held a wagon bed together, causing the seat to fall; Briley v. R. R., 160 N.C. 88; Simpsonv. R. R., 154 N.C. 51; Rumbly v. R. R., 153 N.C. 457; Brookshire v.Electric Co., 152 N.C. 669; Dunn v. R. R., 151 N.C. 313, case where a sledge hammer flew off the helve, and Martin v. Mfg. Co., 128 N.C. 264.
In well considered cases the principle has been extended to relieve an employer of continued and careful inspection in reference to simple tools and in reference to defects existent or which may (92) develop in the course of use and which any employee of average intelligence and prudence would readily note and provide against. R. R.v. Larkin, 98 Tex. 225[98 Tex. 225];Stork v. Cooperage Co., 127 Wic., 318.
But under our decisions an employer may be held for culpable breach of duty when he provides a tool unfitted for the work an employee is given to do, simple or other, and the defect is one that is likely to result in injury, a case presented in Young v. Fiber Co., where an employee was engaged in operating a heavy machine; had been given, for the purpose of setting "dies" in same, a hammer of hardened steel, the dies being also of highly tempered steel, when he should have been supplied with a soft-metal hammer, and he was injured in consequence; or when the implement, though not specially complicated, is one requiring some preparation and prevision on the part of an employer and presenting a case where an employee is not afforded equal opportunity to observe and note defects, instances presented in Mercer v. R. R., 154 N.C. 399, injury from a defective chisel driven by a sledge hammer in cutting rivets from an iron boiler, and Cotton v. R.R., 149 N.C. 227, a railroad truck, where the pin had become worn, allowing the wheel to come off, causing an injury; or where the employer is aware of the defect causing the injury or should have been in the proper performance of his general duty to provide for the safety of his employees, and, from the nature and present use of the tool, the defect is one that is likely to result in injury. Mincey v. R. R., 161 N.C. pp. 467-471; Reidv. Rees, 155 N.C. 230.
In Mincey's case, Walker, J., after referring to the obligation of an employer to provide suitable and safe appliances, and the limitations upon the principle at times obtaining in case of simple tools, continued as follows: "But this relaxation of the rule can have no application to a defect of which the master is actually cognizant and which, as a reasonable man, he should appreciate is likely to result in injury to one using the implement as it is likely to be used, and which is neither known to the employee nor of such a character as to be apparent from *Page 136 
observation likely to accompany its use. In such case the general rule of negligence is fully effective, and the master who knowingly and negligently exposes his employee to a peril unknown to the latter must respond for the damage which results." And in Reid's case, supra, it was held: "The distinction drawn with reference to inspection owed by the master between simple and complicated tools and implements which he has furnished his employees for the purpose of their work has no application when a defect which approximately caused an injury had theretofore been called to the master's attention, and he had promised to repair it, and the injury occurred within a reasonable time thereafter." And it may be well to note that, in Martin v. Mfg. (93) Co., supra, recovery was denied because the defect in the hammer was latent, and it was expressly recognized that if the defect had been known to the employer or open to ordinary observation and one from which injury would probably result, that liability might attach. On the record, therefore, with evidence on the part of plaintiff tending to show that he was given a drift pin, the only one available, that was "burred and battered" at the end; that it had broken off and had remained so for at least thirty days, necessarily to the observation of Halleck, plaintiff's immediate boss, and that plaintiff had notified the foreman that the tools were in bad shape and unfitted for the uses they were designed for, an order of nonsuit could not be sustained in reference to the first issue, that as to the alleged negligence of the defendant. And in reference to the conduct of the plaintiff, presented chiefly under averment of assumption of risk, it is established in this jurisdiction that dangers arising from negligent failure of an employer to supply safe and suitable implements and appliances are not considered among the ordinary risks assumed by an employee under and by virtue of his contract of employment, and, in reference to this position, the Court has repeatedly held that "While an employee assumes all the ordinary risks incident to his employment, he does not assume the risk of defective appliances due to his employer's negligence, unless the defect is obvious and so immediately dangerous that no prudent man would continue to work on and incur the attendant risks. Pressly v. Yarn Mills, 138 N.C. 410; Hicks v. Mfg. Co.,138 N.C. pp. 319-327, citing Lloyd v. Hanes, 126 N.C. 359; Sims v.Lindsay, 122 N.C. 678; Patterson v. Pittsburg, 76 Pa. St., 359; Kane v.R. R., 128 U.S. 95. And in recognition of the principle, the question is usually one of, fact for the jury to decide, upon all the facts and attendant circumstances of the case, including the nature and use of the tool, the character and extent of the damage incident to its use; whether the employee was presently working with the defective tool under orders of his superior; whether he had complained of the conditions, and continued to work on in the reasonable *Page 137 
expectation that they would be remedied: these considerations, if present, and all other facts in evidence and relevant to the inquiry, are to be weighed by the jury and the issue determined whether an employee was guilty of contributory negligence in continuing to work on in the presence of a known danger.
In a well considered case on this subject, N. Y., N. H. and HartfordR. R. v. Vizvari, reported in 210 Fed., 18, the Court, among other things, quotes with approval from Bevin on Negligence (3 Ed.), p. 620, as follows: "Whether continued working in circumstances of danger amounts to an acceptance of the risk or not is now settled to be a question of fact that must not be withdrawn from the jury." And Rodgers,J., delivering the opinion, further said: "That the question of negligence must go to the jury where the facts are in dispute (94) and men of fair minds might draw different conclusions from the facts in evidence, citing Thompson on Negligence, secs. 429-430. And so in reference to assumption of risks, where an employee having knowledge of a defect or danger calls, as in this case, the attention of his employer or representative to it, and is ordered to go on with his work, the question should go to the jury to say whether the danger was so manifest that a person of ordinary prudence and caution would not have incurred it, and also whether the risk was imminent." An addenda that seems to have the sanction of the Supreme Court of the United States in the very recent case of Seaboard R. R. v. Horton, Current Reporter, Vol. 36, No. 6, p. 180.
Considering the record and the facts in evidence in the light of these decisions, we are of opinion that there was error in the order of nonsuit, and the cause should have been submitted to jury on the questions whether defendant company was guilty of negligence, the proximate cause of plaintiff's injury, and whether plaintiff, under all the facts and attendant circumstances, was guilty of contributory negligence in continuing to work and use the drift pin when aware of its defects and dangerous condition.
Reversed.
Cited: Morris v. R. R., 171 N.C. 534, 535 (1d); Hickman v. Rutledge,173 N.C. 179 (c); Rogerson v. Hontz, 174 N.C. 28 (1cc); King v. R. R.,174 N.C. 39 (1cc); Thompson v. Oil Co., 177 N.C. 282 (1c); Winborne v.Cooperage Co., 178 N.C. 90, 91 (1d); Hensley v. Lumber Co., 180 N.C. 576
(1c); McKinney v. Adams, 184 N.C. 564 (1c); Bryant v. Furniture Co.,186 N.C. 443 (1c); Medford v. Spinning Co., 188 N.C. 128 (2c);Crisp v. Thread Mills, 189 N.C. 92 (2c); Fowler v. Conduit Co., 192 N.C. 17
(1c); Watson v. Construction Co., 197 N.C. 594 (1c); Thomas v. Tea Co.,198 N.C. 823 (1e, 2e); Cole v. R. R., 199 N.C. 393 *Page 138 
(1c); Highfill v. Mills Co., 206 N.C. 585 (1c); Lee v. Roberson,220 N.C. 62 (1c).