H. L. POTTER, BY HIS NEXT FRIEND, J. H. POTTER, v. ATLANTIC COAST
LINE RAILROAD COMPANY.

(Filed 3 April, 1929.)

1. **Master and Servant E a—In action under Federal Employer's Liability
   Act Federal decisions apply.**

   In an action brought under the Federal Employers' Liability Act in the
   State Court against a railroad company to recover damages caused to a
   servant, the Federal statutes and decisions control.

2. **Master and Servant E b—Tools and appliances under Federal Em-
   ployer's Liability Act—Negligence—Nonsuit.**

   The duty of a railroad company to provide for its employees engaged
   in interstate commerce reasonably safe and suitable cars, engines, appli-
   ances, machinery, track, roadbed, works, etc., "or other implements" as
   required by the Federal Employer's Liability Act is held to mean such
   instrumentalities and appliances as are personal or movable, or imple-
   ments and appliances of manual operation, and where such negligent
   failure is relied on in respect to such "appliances," defendant's motion as
   of nonsuit will be granted unless there is some evidence that the imple-
   ments complained of fall within the class intended by the Federal Statute.

3. **Master and Servant E b—Federal Employer's Liability Act—Safe place
   to work—Assumption of risk—Nonsuit.**

   While it is the nondelegable duty of the railroad company to furnish
   its employees engaged in interstate commerce a reasonably safe place to
   work, in the exercise of due care, the plaintiff's evidence is insufficient
   when it tends only to show that he was experienced in the work, and that
   the injury in suit occurred under the usual conditions ordinarily obtaining
   in like work, he being held to have assumed the risk under the Federal
   Employer's Liability Act, under which the action has been brought in the
   State Court, and defendant's motion as of nonsuit upon this evidence
   should be allowed.

APPEAL by defendant from *Cranmer, J.,* at September Term, 1928, of
BRUNSWICK. Reversed.

The plaintiff, a minor 19 years of age, brought suit against the de-
fendant to recover damages for personal injury alleged to have been
caused by the negligence of the defendant. The defendant was engaged
in interstate commerce; the plaintiff was in its employ; and the case
was tried under the Federal Employers' Liability Act.

The plaintiff alleged in substance that he and other employees of the
defendant were repairing a trestle spanning Hood's Creek, in Bruns-
wick County, on the defendant's road extending from Wilmington
through Navassa to Florence, South Carolina; that in the course of the
work it was found necessary to remove pieces of timber called "bolsters"
from their place under heavy timber which supported the cross-ties and
the steel rails; that after the pieces were removed they were to be

slidden towards the end of cap sills which rested on piling; that near the ends of each piece ropes were to be fastened, and then extended over the stringers or guard rails at the end of the cross-ties and given to men on the trestle; that the men were to raise the bolsters upon the trestle, pulling the rope over the guard rails; that while they were doing so one of the bolsters was caught under the end of cross-ties and the plaintiff was ordered to push it from the cross-ties and thereby to release it so that the men using the ropes could pull the bolster on the trestle; and that while in the act of obeying the order the plaintiff slipped or lost his balance, fell to the ground and was injured. He alleged, further, that the defendant was negligent in that it required him to release the bolster when the cross-ties and stringers were wet and slick, when the stringers were rounded on top, when the defendant had not furnished him any tools, appliances, or equipment and had not taken any other efficient measures to prevent him from falling, and that the defendant's negligence was the proximate cause of his injury.

The defendant answered the complaint denying the material allegations and pleaded contributory negligence and assumption of risk. The issues of negligence, assumption of risk and damages were answered in favor of the plaintiff and the issue of contributory negligence was answered in favor of the defendant. Judgment was given for the plaintiff and the defendant appealed, assigning error.

*Bryan & Campbell for plaintiff.*
*V. E. Phelps, L. J. Poisson and Robert W. Davis for defendant.*

ADAMS, J. The plaintiff admits that the controversy is to be determined under the provisions of the Federal Employers' Liability Act, and that the two decisive questions are involved in the first and third issues. The defendant in apt time moved to dismiss the action as in case of nonsuit on the grounds that the plaintiff had not shown any act of negligence on the part of the defendant, and, if he had shown negligence, that the plaintiff had assumed the risk of personal injury and was barred of his alleged right to recover damages. The motion was denied. We are therefore first concerned with the question whether the evidence when construed most favorably for the plaintiff is sufficient to make a case of actionable negligence entitling the plaintiff to an affirmative answer to the first issue.

Negligence, which is not defined by the Employers' Liability Act, must be determined by applying the principles of the common law. *Brundege v. R. R.,* 154 N. E. (Ill.), 433. In general terms it signifies a failure to exercise that degree of care which the circumstances demand and which prudent men ordinarily observe. *R. R. v. Richardson,* 91 U. S., 454, 23 Law Ed., 356. In the case of a passenger the fact of an

accident usually carries with it a presumption of negligence; but a different rule imposes upon an employee the burden of showing as an affirmative fact that the employer has been negligent. *Patton v. Railway Co.,* 179 U. S., 655, 45 Law Ed., 361. And in determining an issue of negligence under the Federal Act the decisions of the Supreme Court of the United States must control. That Court has held that submission to the jury of contested issues of fact is not required in the Federal courts if there is only a scintilla of evidence; that it is the duty of the judge to direct the verdict when the testimony and all inferences which the jury could justifiably draw therefrom would be insufficient to support a verdict for the other party; and, further, that this Federal rule must be applied by State courts in cases arising under the act. *R. R. v. Hughes,* ........ U. S., ...., decided 18 February, 1929.

Section 1 of the Act of 1908 (45 U. S. Code, Annotated) provides that every common carrier by railroad while engaging in interstate commerce shall be liable in damages . . . for injury or death resulting in whole or in part from the negligence of any of its officers, agents, or employees, or by reason of any defect or insufficiency, due to its negli-· gence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

The plaintiff's brief is confined to alleged negligent acts of omission— the defendant's failure to exercise due care to provide for him a reasonably safe place in which to work and reasonably safe tools, appliances and equipment.

"The word 'equipment' as used in a contract or statute relating to railroads has been held to mean the necessary adjuncts to the operation of a railroad, such as cars, locomotives, and other movable property. The term cannot, however, be construed to include everything that is necessary to the operation of the road and is not broad enough to include structures such as machine shops, round-houses, and the like." 22 R. C. L., 902; *Elliott v. Payne,* 239 S. W. (Mo.), 851, 23 A. L. R., 706. In the latter citation it is said that the word "equipment" is applied more to personal and movable property than to fixed or real property; and we think it manifest that the words "tools and appliances," as used in the complaint, were intended to apply to implements or instruments of manual operation. We have found no evidence of the defendant's negligent failure to provide such instrumentalities for the benefit of the plaintiff. There is nothing in the record to show that any tool or appliance was essential to the prosecution of the work in which the plaintiff was engaged, or was approved and in general use by persons doing the same or similar work. The plaintiff made use of a bar to slide the bolster to the end of the cap sills, and immediately after he had worked the bolster from under the stringer he undertook to assist in raising it;

POTTER *v.* R. R.

but it was brought up by means of ropes and not by the use of tools. For this part of the work no tool or appliance was requested; apparently none was needed. These facts, it would seem, leave as the only basis of the cause of action the defendant's alleged negligent failure to provide a reasonably safe place for the plaintiff while carrying on his work.

Upon this cause of action the plaintiff must fail. Of course the defendant owed him the nondelegable duty to exercise due care to provide a reasonably safe place in which to work; but the question is whether the evidence tends to show a breach of this duty. The answer, we think, may be found in the plaintiff's own testimony. He was 19 years of age when injured. He had worked on the defendant's trestle force in 1926; again for two months immediately before he was injured; also at some other time in the defendant's carpenter department. In his testimony he said: "I was replacing a bolster, which is a piece of timber which goes between the stringers and cap sills. The cap sills sit upon the piling that is driven down. I think the trestle was about eighteen or twenty feet high. The bolster sits on the cap sills and the stringers are on top of the bolster and the cross-ties on the stringers. There is a guard rail at the end of the cross-ties. The bolsters are twenty-one inches wide and about six or seven inches thick. They consist of three pieces of 7 x 14 timbers bolted together. They are about seven feet in length. On this day we were repairing bolsters and trestles. In order to do the work we had to take out the bolsters. At the time I was hurt we had taken the bolster out from under the stringer. It had to be taken out in order to repair it. They placed two ropes, one under each end of the bolster and around it on the outside of the guard rail and brought it up. The rope was looped around the bolster, one at each end. The men who were pulling on it were on top of the trestle. In pulling it up it got fastened under the cross-ties and I was instructed to help them. I was told to get it out from under the track. I went there like I was told, and I braced myself and reached over and got overbalanced. I braced myself by bearing against the guard rail and bracing; the guard rail was round and I lost my balance and slipped and had no way to catch my hold. I was trying to get the bolster loose so they could bring it over the track when I fell. I struck on a cross piece with my back, which was about nine feet from the top of the trestle and slipped off and fell to the ground. . . . On top of the stringers were laid the cross-ties and at the end of the cross-ties on each end were the guard rails running parallel with the railroad lines in the middle of the trestle. The cap sills extended beyond the guard rail about twenty inches. The guard rail was about six inches above the cross-ties. In taking the bolster from under the trestle you jack up the stringer, carrying with it the cross-ties, guard rail and railroad rail, and this had been jacked up at

the time to clear the bolsters. I slid the bolster to the end of the cap sills using a piece of bar, working it out from under the stringer. The ropes were fastened to the rail and passed over the guard rail and cross-ties and around under the bolster, and the loose ends were brought up. One rope on each end of the bolster. The men were pulling the bolster up on top of the track. As they pulled on the ropes the bolster rolled up on the trestle against the guard rail. I went there to get it loose from the cross-ties. The bolster was right underneath the cross-ties. The cross-ties extend about an inch beyond the guard rail usually. I do not know whether these extended or not. It was about twenty-two inches from the cap sill to the top of the trestle. I went there to help raise the bolster and slipped and fell over. It had been raining practically all that day."

J. H. Potter testified that the plaintiff had told him that he put his foot against the stringer which had a "rounding edge and everything being slick, he got overbalanced and there was nothing to protect him and nothing to do but fall."

That the stringer had a "rounding edge" can hardly be regarded as evidence of a negligent omission of the defendant's duty. The principle that an employer is required in the exercise of due care to provide for his employee a reasonably safe place in which to work does not usually apply to "ordinary everyday conditions requiring no special care, preparation, or prevision, where the defects are readily observable, and there is no reason to suppose that the injury complained of will result." *Bunn v. R. R.,* 169 N. C., 648; *Smith v. Ritch,* 196 N. C., 72. Indeed, under the Federal Act, except as provided in section 4, the employee assumes, not only the ordinary risks of his employment, but such as are extraordinary or due to the negligence of his employer, when they are obvious or fully known and appreciated. *R. R. v. Koske,* ...... U. S., ....., decided 18 February, 1929.

All the defendant's evidence tends to show that its work was done in the customary method; and while, as the plaintiff insists, the test of responsibility is whether the employer has exercised due care, still if such methods of performing the work are adopted as are generally used by prudently conducted roads engaged in the same business and surrounded by like circumstances, the employer as a rule will not be liable. *Railway Co. v. Barrett,* 166 U. S., 617, 41 Law Ed., 1136.

The defendant insists that the plaintiff's injury resulted from chance or casualty, or from his assumption of risk, and that in either event the defendant cannot be held to respond in damages. We concur to the extent of saying that the evidence is not sufficient to warrant the verdict which was returned or the judgment which was signed and entered of record. The motion for nonsuit should have been granted.

Judgment reversed.