## NASH SIBBERT v. SCOTLAND COTTON MILLS.

### (Filed 30 October, 1907).

**Negligence—Safety Appliances—Evidence—Nonsuit.**

> The master is responsible for damages for allowing a safety appliance used in connection with dangerous machinery to remain in such condition as to be ineffectual, when he had actual or constructive knowledge thereof. It was error in the court below to sustain a motion for judgment as of nonsuit upon evidence tending to show that plaintiff was injured by his sleeve catching in cogwheels or grooves of a machine, which could have been prevented if the "shifter" used for stopping the running machinery had been in proper condition; that the "boss" or manager of the machinery room had been several times notified thereof; that the plaintiff continued to work with knowledge of the defect.

CIVIL ACTION for recovery of damages for injury sustained by plaintiff while at work in defendant's mill, heard before *Councill, J.,* and a jury, at March Term, 1907, of the Superior Court of SCOTLAND County.

The testimony of plaintiff tended to show that he was, at the time of the injury, nineteen years of age, employed by one Terry, head boss of the night force; that he was instructed by Terry how to do the work to which he was assigned—"oiling and tying on bands" on twenty-four frames at night. He says: "All frames have shifters to throw belt which runs the frame from the tight to the loose pulleys. The shifter is a rod extending from the pulley at one end of the frame, looping over the belt, to the other end of the frame. This rod runs underneath top of frame and is connected with two levers coming out on top. The levers shift the belt from the tight to the loose pulley. Levers have cross-arms coming down to the edge of the frame. In working the shifter you pull either lever and the frame is started; push the lever and the frame is stopped. While standing by the frame, there is no other way to stop or start it." Plaintiff further says that, when he first entered defendant's employment, the shifter was in good condition. Got "out of fix" about two weeks

before he was injured; that he did not know how to fix it; did not have much experience when he was injured. He was doing his work like Terry told him; never told him anything about the cogs under the frame. Plaintiff described the manner in which he was injured: "The band that ran one of the spindles had broken. I went to tie it on. As I reached in to do this, my shirt sleeve, just above the wrist, caught in the cogs of the travis gear under the frame. This drew my arm down and against the cogs and produced the injury. * * * When I was caught in the cogs, my shirt sleeve was buttoned around my wrist. There are two of these cogs, called travis cogs, and they work together. At night there is no light under the frames—just shadows. When I saw my sleeve caught, I called for help. Cora Norris first came to help me. She came when my sleeve was first caught, and took hold of the lever of the shifter to stop the frame. Then she tried the other lever. Neither would work. She then tried to throw off the belt at the end of the frame, but was not able." He says: "If the shifter had been in fix at the time my sleeve was caught, I could have reached the lever and stopped the frame." There was no other way except to pull the end of the shifter over or throw the belt off.

Cora Sibbert, a sister of plaintiff, testified that both levers to the shifter were "out of fix"—had been so for three or four weeks before plaintiff was injured; that she asked the boss of the day force to fix them—asked him nearly every day.

There was other evidence tending to show that the levers were "out of fix" at the time of the injury.

At the close of plaintiff's evidence, his Honor, upon defendant's motion, directed a judgment of nonsuit. Plaintiff appealed.

*Cox & Dunn* for plaintiff.
*Morrison & Whitlock* for defendant.

CONNOR, J., after stating the facts: It may be conceded that the frames at which plaintiff was put to work were of

proper construction and in good condition; that there was no
evidence on the part of defendant, either in respect to the
frames or the travis gear; that defendant was guilty of no
negligence in failing to instruct plaintiff in his work.    It
may be further conceded that his sleeve getting caught in the
travis gear was an accident for which defendant was not
responsible, or that plaintiff did not exercise due care to
avoid the danger of getting caught in the cogs.    The ques-
tion arises, whether there was negligence in permitting the
levers of the shifters, provided for the purpose of starting
and stopping the frames, to be "out of fix," and whether such
negligence was the proximate cause of the injury.    It appears
that the wheels, upon which were the cogs of the travis gear,
move slowly, and that, if the shifters had been in good repair
and had performed the office for which they were intended,
the frames could easily have been stopped by pushing the
lever, throwing the belt from the tight to the loose pulley, and
plaintiff would not have sustained any injury further than
tearing his shirt sleeve.    The plaintiff, assuming, as we must
do, the truth of his testimony, was pursuing instructions—
working as directed by the "head boss."    There is always
more or less danger that employees working in mills, even
when the machinery is in proper repair, will become entan-
gled in the wheels, cogs, etc.    This is one of the dangers
incident to the employment.    Where there is no negligence
in respect to the construction, repair of the machinery, or in
failing to give instruction as to the manner of operating the
machine, an injury sustained by the employee is attributed
either to accident or the negligence of the employee.    The
risk of such injury is assumed.    Recognizing the danger of
such accidents, employers use such safety appliances as are
in general use, either to avert the danger or to stop the ma-
chine in the event that an injury is imminent.    Defendant
had attached to the frames, upon which plaintiff was em-
ployed, shifters controlled by levers, easily operated, by which

in an emergency the frames could be stopped. It was the duty of defendant to use reasonable care, by proper construction and frequent inspection, to have and keep them in working order. If it failed to do so, there was a breach of duty to plaintiff. He says that, after his sleeve was caught in the cogs, there was ample time to have stopped the frame, if the shifter had not been "out of fix." This is evident from the fact that plaintiff's sleeve was caught near to his wrist, while the injury sustained was at his armpit, showing clearly that, if the shifter had worked, the injury would have been avoided. It seems that he and those who came to his relief did all in their power to stop the frame, but failed to do so because of the defective condition of the shifter or the lever to it. If the jury find that the injury, notwithstanding preceding conditions, would not have been sustained but for the defective condition of the shifter, such defective condition would be the proximate cause of the injury—the last, real cause. This question, in the light of the evidence, should have been submitted to the jury. We concur with his Honor's ruling upon the questions of evidence presented upon the record. The fact that at one other mill the wheels of the travis gear were boxed does not tend to show that it was usual or customary to do so. *Marks v. Cotton Mills,* 135 N. C., 287. Nor do we think that the proposed evidence of the condition of the lever after the injury was competent. The only questions presented by this record are whether the shifter was a safety appliance, and whether it was in proper repair and condition, and if not, whether the defective condition was known or ought by proper inspection to have been known to defendant's servants whose duty it was to inspect it, and whether such defective condition, if found by the jury, was the proximate cause of the injury. These were all questions for the jury. We do not perceive any evidence in the case, as now presented, of contributory negligence. If the shifters got in defective condition after plaintiff began work, he was not required to

abandon his employment—he did not assume the risk incident to danger by reason of such negligence. *Sims v. Lindsay,* 122 N. C., 678; *Lloyd v. Hanes,* 126 N. C., 359; *Marks v. Cotton Mills,* 138 N. C., 406.

In directing judgment of nonsuit there was error, for which there must be a new trial.

New Trial.