P. P. YARBOROUGH v. F. C. GEER COMPANY, WELLS BROTHERS, AND NATIONAL FIRE-PROOFING COMPANY.

(Filed 12 April, 1916.)

**1. Master and Servant—Safe Place to Work—Tower Elevators.**

An elevator 60 feet high used for the purpose of elevating and distributing concrete in the construction of a building, at the top of which a servant is required to work, requires the care and supervision of the master, under the principle that the master, in the exercise of ordinary care commensurate with the danger, should furnish his servant a safe place to do his work.

**2. Same—Trials—Evidence—Negligence.**

Where the evidence tends to show that a servant was required to work at the top of a 60-foot elevator used for the distribution of concrete in the erection of a building, and was injured by stepping on a loose plank, not properly nailed to the platform, and thrown to the first floor, and it appears that it had not been his duty either to aid in the construction of the platform or inspect it, and that he had gone there without knowledge of the defect, to work at the order of a vice-principal: *Held*, the servant had a right to assume that the place was safe, and the evidence is sufficient upon the issue of the master's actionable negligence.

**3. Master and Servant—Dangerous Employment—Assumption of Risks—Master's Negligence.**

The rule that the servant assumes the risks incident to the nature of a dangerous employment has no application to injuries directly resulting from the negligence of the master in failing in his duty to furnish him a safe place to work, or that of another to whom the master had delegated this duty.

APPEAL by defendant from *O. H. Allen, J.,* at November Term, 1915, of DURHAM.

Civil action, tried upon these issues:

1. Was the plaintiff injured by the negligence of defendant F. C. Geer Company, as alleged in the complaint? Answer: "No."

2. Was the plaintiff injured by the negligence of the defendant Wells Brothers Company, as alleged in the complaint? Answer: "No."

3. Was the plaintiff injured by the negligence of the defendant the National Fire-Proofing Company, as alleged in the complaint? Answer: "Yes."

4. If so, did plaintiff, by negligence on his part, contribute to said injury, as alleged in the answer? Answer: "No."

5. Did the plaintiff assume the risk incident to his employment, as alleged in the answer? Answer: "No."

6. What damages, if any, is the plaintiff entitled to recover? Answer: "$5,000."

From the judgment rendered, the defendant the National Fire-Proofing Company, appealed.

*Fuller & Reade for plaintiff.*
*Bryant & Brogden for defendants.*

BROWN, J. In the view we take of this case, it is unnecessary to discuss the several assignments of error *seriatim.* The questions of law presented are few and simple and can be considered under the motion of nonsuit. The plaintiff was employed by the National Fire-Proofing Company, hereinafter called the defendant, in the construction of a building for the Geer Company in the city of Durham. Wells Brothers Company were the contractors to erect the building, and they sublet the concreting of the several floors of the building to the defendant the National Fire-Proofing Company.

At the time of plaintiff's injury he was employed by this defendant and engaged in concreting the third floor. The concrete was carried by means of an elevator to the top of the building as it was being erected, and from buckets emptied into a hopper; from the hopper it passed into the chute and was conveyed to that part of the building where it was to be laid. The evidence tends to prove that this elevator was about 60 feet high and was an open latticed tower structure.

The plaintiff was sent by the defendant's superintendent, Price, to the top of the elevator tower and directed to operate the hopper. The plaintiff stood upon the platform at the top of the elevator and operated the chute and the hopper from that position. At times it became necessary to climb on top of the hopper in order to prevent its becoming choked. The plaintiff climbed on top of the hopper for the purpose of freeing it, and in getting back to his position on the platform, as he was attempting to step off of the platform, he stepped on one of its planks, which, according to the evidence, was not nailed or in any way fastened down, and as it gave way it caused the plaintiff to fall to the first floor, whereby he was seriously injured.

Plaintiff testifies: "I had nothing to do with laying those planks that were across there for me to stand on. The first time that I saw the planks or used them was when I was ordered up there to work."

In addition to excepting to his Honor's refusal to allow the motion to nonsuit, the defendant excepts to the following charge: "But I hold as applicable to this case that a structure of this kind, where a person is put to work upon it and has to ascend as high as 60 feet in the air, and do the work, that the principle of requiring the master to furnish a safe place to work—a reasonably safe place—does apply to this case, and I instruct you that that principle does apply to this case, subject, however, to the rules I shall lay down later as to contributory negligence

and assumption of risk. I am holding that where a man is put to work on a structure of this kind, as high as he was in the air, that the master must furnish him a reasonably safe place to work, and as to whether this was a reasonably safe place, I am leaving that for the jury to say—putting a man to work on a platform of this kind without nailing it down."

One of the elementary principles of the law of negligence now established is that the master must furnish his servant a reasonably safe place in which to do his work, consistent with the character of the work to be done. This principle is so well settled that it needs no citation of authority to support it. There are exceptions to this as well as to most other rules.

The defendant contends that this case falls within the rule announced by this Court in the case of *Bunn v. R. R.,* 169 N. C., 648; *Simpson v. R. R.,* 154 N. C., 52, and others of similar import; that is, that the duty of the master to provide for his employee a safe place to work does not usually prevail under ordinary conditions requiring no special care, preparation, or prevision, where defects are readily observable and where there was no good reason to suppose that injury would result.

We agree with his Honor that a structure of the kind which the plaintiff was required to ascend and work upon, 60 feet from the first floor, is not of the kind referred to in any of the cases which have been made exceptions to the ordinary rule. This particular structure was a tower elevator in which concrete was carried up to its top and which workmen were required to ascend and use at a dangerous elevation. If such a structure as this does not require the supervision of the master to see that it is in good and proper condition, as far as circumstances will reasonably permit it to be, then we do not think any structure could require such supervision. *Barkley v. Waste Co.,* 147 N. C., 585; *Smith v. R. R.,* 170 N. C., 184.

There is no similarity whatever, in our opinion, between that class of cases represented by *Bunn v. R. R.,* 169 N. C., 648, and *Simpson v. R. R.,* 154 N. C., 52. The plaintiff took no part in the erection of this tower and was not required to inspect the condition of the platform. When he was sent on top of this structure by the superintendent, he had the right to assume that the platform was as secure as it could reasonably be made, and he was not required to inspect it, and it seems from the evidence that he had no knowledge that the planks on this platform had not been in any way fastened down. Labatt on Master and Servant, 1904 Ed., secs. 409c, 410a, and cases cited in Note G to section 412 on page 1150. *Cotton v. R. R.,* 149 N. C., 227; *Aiken v. Mfg. Co.,* 146 N. C., 324; *Steele v. Grant,* 166 N. C., 635; *Barkley v. Waste Co.,* 147 N. C., 585; *Standard Oil Co. v. Bowker,* 141 Ind., 12.

There is abundant evidence tending to prove that the tower was erected by this defendant; that the planking of the top of the platform was left unfastened, and that it was the direct and proximate cause of the plaintiff's injury. There is no evidence, so far as we can see, that the plaintiff did anything of a negligent character which contributed to his own injury. The plaintiff in accepting this particular employment assumed all such risks as are naturally incident to it, but he did not assume those risks which arise out of the negligence of the defendant. If in the construction of this tower the defendant delegated the work to one of its servants, it is responsible for the manner in which it was discharged, and the plaintiff did not assume any risk which was the proximate result of the defendant's negligence or of those to whom the primary duty of the defendant was delegated. *Tanner v. Lumber Co.*, 140 N. C., 475; *Avery v. Lumber Co.*, 146 N. C., 592; *Smith v. R. R., supra; Aiken v. Mfg. Co.*, 146 N. C., 324; *Orr v. Telephone Co.*, 132 N. C., 691.

No error.