GEORGE VANCE FOWLER, BY HIS NEXT FRIEND, W. N. FOWLER, v. CAROLINA CROSS ARM AND CONDUIT COMPANY.

(Filed 27 May, 1926.)

1. **Negligence—Master and Servant — Employer and Employee — Safe Place to Work—Safe Instrumentalities.**

The master is not liable in damages to its servant for his failure to furnish the latter reasonably safe instrumentalities to perform his duties within the scope of his employment, in the absence of actual or con-

structive notice of the defect; or unless through its vice-principal, it has negligently instructed the servant to do the work under an assurance of safety, or where the negligence complained of is not the proximate cause of the injury alleged.

2. **Master and Servant—Employer and Employee—Negligence—Duty of Master.**

The master in the performance of his duty to furnish reasonably safe platforms for his servant to unload lumber, etc., from a railroad car, coming within the scope of the latter's duties, is held to the exercise of ordinary care in selecting material reasonably suitable and safe for its construction, and like care in its construction and inspection, without the power to delegate this responsibility to other servants so as to avoid its liability.

3. **Same—Evidence—Nonsuit.**

Where there is evidence only that the master's vice-principal has instructed an eighteen-year-old employee in his absence to unload lumber with other employees from a railroad car in the manner in which the employees had experience, by means of a temporary unloading platform to be constructed of plank and sills, but only for transferring the timber (railroad sills) from the cars, without evidence of any defect in the material used in this platform, and the employee's injury is caused by his attempting to pile the lumber on this platform of considerable weight instead of transferring it, as was the invariable custom: *Held*, insufficient evidence as to the negligent failure of the master to furnish proper instrumentalities, and defendant's motion for judgment as of nonsuit should have been granted.

4. **Negligence—Master and Servant—Employer and Employee—Infants —Courts—Questions for Jury.**

It will not be held as a matter of law under the facts of this case, that an eighteen-year-old lad, of experience in such matters could not be considered capable of constructing a temporary platform for the unloading of lumber or sills from a railroad car.

CIVIL ACTION, tried before *Lyon, J.,* at December Special Term, 1925, of MECKLENBURG.

The plaintiff, a boy about eighteen years of age, was employed by the defendant as a general laborer or utility man, doing anything that "came along; whatever they wanted me to do." He had been working for the defendant about six or eight weeks before his injury. He alleged that on or about 30 September, 1924, he was seriously and permanently injured by the fall of a platform, while engaged in the line of his duty and in executing the orders of the foreman to unload a car of lumber. The car of lumber in question was pulled up opposite defendant's building. In order to unload the car it was necessary to build or lay a platform from the platform of the building to the door of the car, a distance of six or eight feet.

The plaintiff testified as follows: "On Saturday morning Mr. Stills (foreman), told us not to come back Monday morning to work, but to come back Tuesday morning, and there would be a car of lumber there to be unloaded. If he did not come in Monday he would be there Tuesday. He just told us to unload the car of lumber. He told us where to unload it; in the same place we had always unloaded it. There was not any other place for unloading it. We ordinarily unloaded the lumber right at the rear end of the building. There was a platform there part of the way; wasn't one all the way. We had to build it from the platform of the building out to the car; that was about six feet I reckon. The instructions he gave us for unloading the lumber were, he just told us to unload it there until he came, and in the same place, and use the same stuff we had been using. That was all we had to use. We had been using in unloading just 4 x 4, that we used at this time. There were four pieces used. We laid one end of this lumber on the platform that was in the building and took these little dinky crossties and put them up at the other end; stacked them up on top of each other, made a pile, and laid the 4 x 4 from the platform on the building out on that to make it level. . . . We placed them on this occasion just exactly in the same manner in which we had placed them theretofore. Used the same material all the way around. Used the same number of pieces that we ordinarily used. Hilton and me and the two Barrett boys made the scaffold. We went in there that Tuesday morning and made this scaffold the first thing, the platform that we were piling on. We could put half or two-thirds of the lumber back in the building before we started to put it on the platform that run out from the building. . . . The scaffold under the platform on which I was standing broke and the platform broke."

Plaintiff further testified that about two-thirds of the car of lumber had been placed inside the building, and practically all of the remaining third was piled upon this platform at the time it fell. The exact words of the plaintiff were: "We had right around one-third of a carload, hardly one-third out there. We had no idea of building it for the purpose of stacking lumber on it for long. We had never stacked any lumber on it out that far. Me and Hilton and those two Barrett boys built the platform. I don't remember who picked out the lumber. It was what we had used all the time, 4 x 4, because that is what we had the planer set for when they were planing them. We had used the same skids late the day before. . . . I mean by dinky crossties, short crossties for a little railroad. . . . The condition of those pieces of 4 x 4, the pieces of lumber that were put out there, was good; looked to be."

There was evidence tending to show that the third of the carload of lumber which was loaded on the platform would weigh about twenty-eight thousand pounds; and the contention of the defendant was upon all the evidence, that the platform fell or broke not by reason of any defect, but because the plaintiff and his colaborers had placed more weight upon the platform than it could bear, it being only designed as a temporary structure for unloading cars, and to be used chiefly as a walkway and not a loading platform.

Issues as to negligence, contributory negligence, assumption of risk and damages were submitted to the jury and answered in favor of the plaintiff, awarding damages in the sum of $7,000. From judgment thereon defendants appealed.

*J. F. Flowers, Marvin L. Ritch for plaintiff.*
*J. Laurence Jones, James A. Lockhart for defendant.*

BROGDEN, J. The only exception requiring discussion is whether or not there was sufficient evidence of negligence to be submitted to the jury. If so, there is no reversible error, and the judgment should be upheld. If not, the judgment of nonsuit should have been sustained.

The liability of an employer for injuries to his employees, occasioned and brought about from the use of instrumentalities used in the work, has created a broad field of judicial inquiry. An examination of the authorities will disclose that liability results from the application of the following principles, to wit:

(1) The instrumentality must be defective. *Aiken v. Mfg. Co.,* 146 N. C., 324; *Barkley v. Waste Co.,* 147 N. C., 585; *Yarborough v. Geer,* 171 N. C., 334; *Vogh v. Geer,* 171 N. C., 672; *Howard v. Wright,* 173 N. C., 339; *Winbourne v. Cooperage Co.,* 178 N. C., 88; *McKinney v. Adams,* 184 N. C., 565.

(2) The employer must know of the defect, or be negligent in not discovering it and making the needed repairs. *West v. Tanning Co.,* 154 N. C., 44; *Reid v. Rees,* 155 N. C., 230; *Wright v. Thompson,* 171 N. C., 91.

(3) If the employer gives assurance that the instrumentality is safe. *Atkins v. Madry,* 174 N. C., 187; *Smith v. R. R.,* 170 N. C., 184; *Rogerson v. Hontz,* 174 N. C., 27.

(4) If the work is done under the supervision of the employer and according to his instructions. *Thompson v. Oil Co.,* 177 N. C., 279; *McKinney v. Adams,* 184 N. C., 565; *Hairston v. Cotton Mills Co.,* 188 N. C., 557.

2—192

(5) If the employer, having either express or implied notice of a defect, promises to repair or to procure a reasonably suitable instrumentality. *Whitt v. Rand,* 187 N. C., 807.

The case now under consideration involves the breaking or falling of a platform. The law of negligence, as applied to platforms and ladders, is discussed in the following cases: *Aiken v. Mfg. Co.,* 146 N. C., 324; *Barkley v. Waste Co.,* 147 N. C., 585; *West v. Tanning Co.,* 154 N. C., 44; *Reid v. Rees,* 155 N. C., 230; *Pearson v. Clay Co.,* 162 N. C., 224; *Smith v. R. R.,* 170 N. C., 184; *Yarborough v. Geer,* 171 N. C., 334; *Vogh v. Geer,* 171 N. C., 672; *Howard v. Wright,* 173 N. C., 339; *Lagler v. Roch* (Ind.), 104 N. E., 111; *Colford v. New England Structural Co.* (Mass.), 91 N. E., 409; *Berg v. Pittsburgh Construction Co.,* 128 Minn., 408; *Nevin v. William Grace Co.,* 165 Ill. (App.), 259.

The principles of liability growing out of the use of scaffolds, platforms and walkways, as declared by the decisions of this Court, are as follows: (1) The employer must exercise ordinary care in selecting materials reasonably suitable and safe for the construction of such instrumentalities; (2) ordinary care must be exercised in the construction and inspection thereof; (3) if the employer delegates the construction of such instrumentalities to one of his employees, he is responsible for the manner in which this duty is discharged, and the employee using such instrumentality has a right to assume that the employer has exercised due care both in the selection of proper materials and in the construction of the instrumentality.

The evidence has been set forth at length and a scrutiny of the testimony will disclose the following facts:

(1) There is no evidence of any defect in the material furnished for the construction of this platform; (2) the plaintiff and his helpers built the platform themselves, according to their own judgment and without any suggestion or control of the employer, it appearing that the foreman was absent at the time the platform was constructed; (3) that the plaintiff had used the same material for unloading purposes on the previous day; (4) that the platform was not built for the purpose of stacking lumber on it permanently; (5) that more lumber had been put out on this platform on this particular occasion than at any other time; (6) that this lumber was being unloaded in the usual way and that plaintiff had been working at the plant for about six weeks.

In our examination of the authorities in this State relating to ladders, platforms and walkways, there is found no direct decision dealing with the question of a platform or walkway actually constructed by the party injured, and the effect this would have upon his right to recover. There is, however, in several of the cases referred to, statements to the

effect that the party injured had no part in constructing the instrumentality causing the injury. These intimations are strong and suggestive; and, while it may be urged that they involve only negative reasoning, there are cases in other jurisdictions expressly holding that where the injured party himself constructs the platform causing the injury, in his own way and the employer has exercised due care in furnishing reasonably fit and suitable materials therefor, no recovery can be allowed. The principle is thus declared in *Lagler v. Roch, supra* (Ind.), 104 N. E., 111: "When the master in person or by another, provides or undertakes to build for the use of his servants a scaffold or like structure, and turns it over to such servants in a completed or supposedly completed state for their use in prosecuting their work for the master, it is undoubtedly his duty to exercise reasonable care to see that it is reasonably safe for the contemplated purposes. But, where the master has used reasonable care in the selection of materials from which to erect such a structure with the design and purpose that the servants shall build it for their own use, and where the servants with knowledge of such purpose and design erect such structure from such material in such a manner as their own judgment dictates to them, the master having no direction or control of such construction, he cannot be held liable for injury sustained by one of such servants by reason of defects in such structure growing out of the manner of the construction thereof." In this case the plaintiff was a boy seventeen and a half years old, who, together with another, built a platform and failed to fasten the planks. The planks slipped, causing injury.

Of course, it must be conceded that the age and experience of a plaintiff and his capacity to observe and appreciate danger, must be considered in applying the rules of liability for injury in such cases. This rule has been pointed out and discussed in many of the cases referred to. There is no evidence in this record that the plaintiff was inexperienced in unloading cars of lumber, or that he did not possess the capacity to reasonably apprehend and appreciate any danger that might be incident thereto. Certainly, it cannot be held, as a matter of law, that an eighteen-year-old boy does not possess such capacity.

The plaintiff in this case is seriously and permanently injured, and his injuries naturally incite in any normal person the deepest feeling of sympathy; but it is the duty of the courts to apply the law as it is written, and we must therefore hold that the motion for nonsuit should have been granted.

Reversed.