[No. 35945. En Banc. August 2, 1962.]

MARIA SIRAGUSA, *Appellant,* v. THE SWEDISH HOSPITAL, *Respondent.** 

*Reported in 373 P. (2d) 767.

Koenigsberg & Brown, for appellant.

Elliott, Lee, Carney & Thomas (Millard C. Thomas, of counsel), for respondent.

HUNTER, J.—This is an appeal from a judgment of dismissal in an action to recover damages for alleged personal injuries.

For the purpose of graphically describing the factual conditions which gave rise to the plaintiff's (appellant's) injuries, we have attached to this opinion plaintiff's exhibit No. 8, which shows the area of the hospital room in which the accident occurred.

At the time of the accident, the plaintiff was engaged in her duties as a nurse's aid for the defendant (respondent) Swedish Hospital in Seattle. She had begun her employment there approximately three months prior to the day of the accident.

On the morning of the accident, she was in room No. 130, a six-patient ward, giving regular care to the patients assigned therein. The time of day was approximately 6 a.m. As a part of her normal duties, she went to the washbasin which was located on the wall behind the door to the room (see attached exhibit) and stood directly in front of it. Previously, upon entering the room, she had closed the door, as was customary, so that persons in the hall could not observe her giving morning care to the patients. Located on the inside of the door to the room was a metal hook shaped like a semiarc with the end turning out in the form of a curl. It was there for the purpose of allowing patients or hospital personnel to open the door from the inside with a forearm. As shown in the attached exhibit, the washbasin was within the swing of the door. While the plaintiff stood by the basin filling it with water, a patient

(Enlargement of door hook area)

in a wheelchair, in order to enter the room, pushed open the door, causing the metal hook to strike the plaintiff in the upper portion of the back. Shortly thereafter, she was hospitalized for treatment of the resulting injuries.

The plaintiff brought this action for the injuries suffered and alleged negligence on the part of the defendant hospital in failing to furnish her with a reasonably safe place to work, with specific regard to the structural layout of the washbasin and the metal hook on the inside of the door. In its answer to the complaint, the defendant generally denied any negligence on its part, and by way of affirmative defenses, alleged contributory negligence of the plaintiff and voluntary assumption of the risk.

At the close of all the evidence, the trial court granted the defendant's motion challenging the sufficiency of the evidence and ruled that, in view of the circumstances, the plaintiff assumed the risk of harm as a matter of law and is barred from recovery. Judgment of dismissal was entered and the plaintiff has appealed.

The plaintiff contends that the issue of whether she assumed the risk of the injuries sustained was, under the evidence presented, a matter for the jury to decide and, therefore, the trial court erred in ruling on the issue as a matter of law.

The trial court applied the doctrine of assumption of risk as it has been stated by this court in many previous cases, and there were no contentions made regarding the propriety of the rule. This latter fact is readily understandable in view of the numerous decisions of this court which set forth the doctrine as it was presented by counsel in the trial court. However, the quantity of litigation in which the defense of assumption of risk has been raised and the current social and economic attitudes toward the master-servant relationship require that we re-examine our previous statements of the assumption of risk doctrine in the master-servant area and subject the bases of the rule to the tests of logic and experience.

The common law defense of assumption of risk took on

a harsh rigidity in the area of master-servant relationships in eighteenth and nineteenth century England and the United States. A lucid example of the attitude of the early common law courts is the case of *Crichton v. Keir,* 41 Sess. Cas. 407 (Scot 2d Div.) (1863), where it was said:

" . . . The notion on which it is attempted to impose responsibility on the master in this case is inconsistent with the relation of master and servant in our law. This is a country of free labour. We have no such thing as *travaux forces,* still less have we anything approaching to slavery. . . . It has been said that the master is more powerful than the servant. But I rather think that in this country the servant is not less powerful than the master; and certainly he is quite as able to enforce the contract, and to defend his rights. Now, if a servant, in the face of a manifest danger, chooses to go on with his work, he does so at his own risk, and not at the risk of his master. . . ."

The history underlying the development of the doctrine was adroitly summarized in *Tiller v. Atlantic Coast Line R. Co.,* 318 U. S. 54, 87 L. Ed. 610, 63 S. Ct. 444, 143 A. L. R. 967 (1943), by Mr. Justice Black:

"Perhaps the nature of the present problem can best be seen against the background of one hundred years of master-servant tort doctrine. Assumption of risk is a judicially created rule which was developed in response to the general impulse of common law courts at the beginning of this period to insulate the employer as much as possible from bearing the 'human overhead' which is an inevitable part of the cost—to someone—of the doing of industrialized business. The general purpose behind this development in the common law seems to have been to give maximum freedom to expanding industry. . . ."

In a concurring opinion in the *Tiller* case, Mr. Justice Frankfurter remarked:

"The phrase 'assumption of risk' is an excellent illustration of the extent to which uncritical use of words bedevils the law. A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas. Thus, in the setting of one set of circumstances, 'assumption of risk' has been used as a shorthand way of saying

that although an employer may have violated the duty of care which he owed his employee, he could nevertheless escape liability for damages resulting from his negligence if the employee, by accepting or continuing in the employment with 'notice' of such negligence, 'assumed the risk.' In such situations 'assumption of risk' is a defense which enables a negligent employer to defeat recovery against him. . . .

" . . . *The notion of 'assumption of risk' as a defense —that is, where the employer concededly failed in his duty of care and nevertheless escaped liability because the employee had 'agreed' to 'assume the risk' of the employer's fault—rested, in the context of our industrial society, upon a pure fiction.* . . . " (Italics ours.)

With this understanding of the history of the doctrine, we will now take a clear and critical look at the way in which it has been operating in this state.

We have said time and again that it is the legal duty of the employer to furnish his employees a reasonably safe place to work, and the task of citing all the cases which have announced this rule would be overbearing. That such a rule is not only just, but necessary, hardly needs comment here.

In *Hull v. Davenport*, 93 Wash. 16, 159 Pac. 1072 (1916), this court clearly set forth the rules governing an employer's responsibility to his employees:

"The duty of the master to exercise reasonable care to furnish the servant a reasonably safe place to work and reasonably safe appliances, and to promulgate and enforce a system of rules reasonably calculated to keep the place safe, is well established. . . .

" . . . It is only where the danger of the act which the servant undertakes is not only open, patent and obvious alike to man and master and equally appreciated by both, *but is so plain that reasonable men could not differ as to its existence, and so imminent that a reasonably prudent man would not undertake the act at all,* that the servant assumes the risk in obeying the master's order. . . .

" . . . *The doctrine of assumption of risk, whether assumed to be founded in the fiction of an implied contract with pay commensurate with the danger, or whether it be referred to the maxim, Volenti non fit injuria* (3 Labatt,

Master and Servant, 2d ed., § 1285), *is artificial and harsh at best. It should not be extended beyond its reasonable limits. . . . Whenever, therefore, there is room for reasonable difference of opinion as to whether the servant so appreciated the danger as to make it reckless to proceed, the question is one for the jury, especially where the servant is proceeding under an order of any kind, however communicated. . . .*" (Italics ours.)

It is readily apparent from the italicized portions of the above quotation that what was referred to as an "assumption of risk" doctrine, according to the actual language set forth, was another way of determining whether the employee had been contributorily negligent. This type of reasoning has appeared in other decisions of this court and in decisions in other jurisdictions, and is a natural result of a dissatisfaction with a rule which bars an employee's recovery for injury resulting from his master's negligence without a finding of contributory negligence on his part.

Many cases subsequent to the *Hull* case, reflect no little confusion in attempting to draw a meaningful distinction between the affirmative defenses of assumption of risk and contributory negligence. However, a distinction was clearly drawn by this court in *Walsh v. West Coast Coal Mines,* 31 Wn. (2d) 396, 197 P. (2d) 233 (1948):

"While the defenses of assumption of risk, *volenti non fit injuria,* and contributory negligence are so closely allied that it is sometimes difficult to draw the line between them, they are not synonymous but are founded on separate, distinct principles of law. Contributory negligence involves some fault or breach of duty on the part of the injured person, or failure on his part to use the required degree of care for his safety, *whereas assumption of risk or volenti non fit injuria may bar recovery even though the injured person may be free from contributory negligence.*" (Italics ours.)

The usual statement appearing in our comparatively recent cases as to the application of the doctrine in the master-servant area is the one set forth in *Focht v. Johnson,* 51 Wn. (2d) 47, 315 P. (2d) 633 (1957):

"While it is the legal duty of an employer to furnish his employees a reasonably safe place to work, it is also the

rule that one who, as servant or employee, enters into the service of another, assumes by his contract of employment the risk of all dangers ordinarily incident to the work upon which he engages (*Walsh v. West Coast Coal Mines,* 31 Wn. (2d) 396, 197 P. (2d) 233) *and also the extraordinary risks of employment if they are open and apparent, although due directly to the master's negligence. Cummins v. Dufault,* 18 Wn. (2d) 274, 139 P. (2d) 308." (Italics ours.)

Our present consideration of the rule only concerns "assumption of risk" where the master is negligent in creating or maintaining the dangerous condition. Where the dangers are ordinarily incident to the work, though it is said that the servant "assumes" these, the true analysis is that the master is under no duty to protect the servant with regard to such risks and any injuries, therefore, are not due to the master's negligence. *Jobe v. Spokane Gas & Fuel Co.,* 73 Wash. 1, 131 Pac. 235 (1913); 2 Harper & James, Law of Torts § 21.4 (1956). Hence, the point of inquiry here is to re-examine the rule which bars a servant's recovery for injuries due to his master's negligence, although he was not acting unreasonably (contributorily negligent) in exposing himself to a known dangerous condition.

From the *Walsh* case and the *Focht* case, it is at once seen that the practical effect of the present operation of the doctrine of assumption of risk is to reduce substantially or strictly limit the asserted duty of care owed by the employer to his employees. It is, under these cases and those like them, pure fiction to speak of the employer's duty as one of furnishing a reasonably safe place to work. If an employee is barred from recovery merely because he was aware or should have been aware of the dangerous condition which caused his injury, then it must be because the employer was only under a duty to give warning of the dangerous condition. Only if the employer's duty is relegated to one of providing warning is it fair or just to allow a defense to the employee's action on the ground that the employee "received" warning from his self-acquired knowledge and appreciation of the risk involved.

See Keeton, *Assumption of Risk and the Landowner,* 22 La. L. Rev. 108 (1961); 2 Harper & James, Law of Torts § 21.4 (1956); 3 Labatt, Master & Servant § 953 (2d ed. 1913). On the other hand, if it is true and desirable that the employer has the positive duty to furnish a reasonably safe place to work, it is not just or fair to permit an employer to escape liability for a failure to perform this duty simply because the employee was aware of the danger when he reasonably elected to expose himself to it while in the course of his employment. To do so is to affirm and deny, in the same breath, the employer's duty of care.

The policy reasons which gave rise to the doctrine of assumption of risk in the master-servant area, as set forth in the above quote from *Tiller v. Atlantic Coast Line R. Co., supra,* no longer suffice to support the harsh effects upon injured employees who seek redress for their employer's negligence. Public opinion, reflected in workmen's compensation legislation, has dictated a change in the underlying concepts of employer's responsibility. In almost all areas of industrial activity, social insurance has replaced the common law rules of liability and defenses which grew out of the judicial inclination to foster a growing economy. No longer can it be said that a judicially-imposed doctrine of assumption of risk is necessary or desirable to protect expanding industry from being crippled by employers' responsibility for tortious conduct toward their employees.

To bar recovery when the employee is acting reasonably in exposing himself to a known and appreciated risk is to indulge in the unrealistic and rigid presumption that, in so exposing himself, the employee "assents" to relieve his employer from his responsibility to furnish a safe place in which to work. Such a presumption has no basis in experience, and is not founded upon any current social policy. The existence of such a notion has been soundly rejected by the courts which have carefully analyzed the matter. *Bowater v. Rowley Regis Corp.,* 1 K. B. 476 (1944); *Thrussell v. Handyside & Co.,* 20 Q. B. D. 359 (1888); 61 Jurid. Rev. 37 (1949); Fleming, Law of Torts 455 (1961); *cf. Hull v. Davenport, supra.*

 The time has now come, therefore, to state unqualifiedly that an employer has a duty to his employees to exercise reasonable care to furnish them with a reasonably safe place to work. We now hold that if an employer negligently fails in this duty, he may not assert, as a defense to an action based upon such a breach of duty, that the injured employee is barred from recovery merely because he was aware or should have known of the dangerous condition negligently created or maintained. However, if the employee's voluntary exposure to the risk is unreasonable under the circumstances, he will be barred from recovery because of his contributory negligence. Knowledge and appreciation of the risk of injury, on the part of the employee, are properly important factors which should be given weight in the determination of the issues of whether the employer is *negligent* in maintaining the dangerous condition and whether the employee is *contributorily negligent* in exposing himself to it.

The reasoning behind the rule as now stated is not new, and was early advocated by one of the most able thinkers and writers in the field of master and servant law. 3 Labatt, Master & Servant §§ 960-964 (2d ed. 1913). In § 964 it is stated:

" . . . All that is necessary is to construe, in a manner appropriate to the relations of the parties to the contract of service, the principle that no person has a right to keep his property in such a condition that persons who, with his consent, are brought into close relations with it, will be likely to receive injury, even though they may exercise all the care which it is justifiable to expect from them under the circumstances. . . . The acceptance of this principle would not involve any very startling changes in the law as we now have it. It would merely require us to fix the standard of care incumbent on the master, with a view to the consideration that, as the implied agreement of the servant is merely that he will use ordinary diligence in the discharge of his functions, it is a breach of duty in the master to keep his instrumentalities in such a condition that ordinary diligence will not always save the servant from injury. A rule formulated upon this basis would not make the master an insurer, nor would it necessarily render

him liable simply for the reason that his appliances were old and imperfect. It would merely make his liability dependent upon whether he had or had not acted unreasonably, and, therefore, negligently, in holding out inducements to do work which, at certain conjunctures not unlikely to arise, could not be performed safely without the exercise of a degree of care which no fair-minded, considerate person would demand from a servant. . . ."

. The position which we now adopt has been one of long standing in the state of Missouri. The Missouri rule was succinctly stated in the recent case of *Hines v. Continental Baking Co.,* 334 S. W. (2d) 140 (Mo. 1960):

"In Goodwin v. Missouri Pacific R. Co., 335 Mo. 398, 72 S. W. 2d 988 [1934], *it was held that under the Missouri rule a servant never assumes risks arising from negligence for which the master is liable, but only those which remain after the master has exercised ordinary care.*
" . . .

"To summarize, it seems that while the employer is not an insurer, he must exercise reasonable care in furnishing safe places and safe appliances within which and with which to work; failure to exercise such ordinary care constitutes negligence for which he is liable; it is not required that actual, specific knowledge of the defective premises or appliances be brought home to the master—it is sufficient if in the exercise of ordinary care he should have known thereof; *the servant assumes only such risks as are inherent in his work after the master has exercised such care in providing a safe place to work, and within these confines the ultimate fact question is for the jury but under instructions which preserve such limitations. . . .*" (Italics ours.)

*Markley v. Kansas City Southern R. Co.,* 338 Mo. 436, 90 S. W. (2d) 409, 411 (1936); *George v. St. Louis & S. F. R. Co.,* 225 Mo. 364, 125 S. W. 196 (1910); *Devlin v. Wabash, St. Louis & Pac. R. Co.,* 87 Mo. 545 (1885).

This is also the rule in North Carolina. *Sibbert v. Scotland Cotton Mills,* 145 N. C. 308, 59 S. E. 79 (1907); *Bennett v. Carolina Mfg. Co.,* 147 N. C. 620, 61 S. E. 463 (1908); *Leggett v. Atlantic Coast Line R. Co.,* 152 N. C. 110, 67 S. E. 249 (1910); *Yarborough v. F. C. Geer Co.,* 171 N. C. 334, 88 S. E. 474 (1916); *West v. Fontana Mining Corp.,*

198 N. C. 150, 150 S. E. 884 (1929); *Maulden v. High Point Chair Co.,* 196 N. C. 122, 144 S. E. 557 (1928).

The prior decisions of this court, in so far as they are inconsistent with the reasoning and rule we now express, are hereby overruled.

Applying the rule to the instant case, the trial court erred in dismissing the plaintiff's action on the ground of assumption of risk.

The defendant contends, however, that the judgment of the trial court, nevertheless, is supportable because the record shows that, as a matter of law, there was no negligence on its part; it is further contended that even if it be assumed the evidence could support a finding of negligence, the record is clear that the plaintiff was contributorily negligent. Our examination of the record convinces us that the matters of negligence and contributory negligence were issues for the jury.

■ On the question of negligence of the defendant, the evidence shows that the architect who designed the layout of the room knew that the door came into contact with the washbasin when fully opened. He testified that in order to protect either the door or the basin, he placed a rubber knob on the surface of the door to absorb a forceful contact. There were no other stops or devices used to regulate the swing of the door. We do not think, as the defendant argues, that the plaintiff was bound to produce expert testimony to prove that the layout of the ward did not meet the customary standards of hospitals in the area or that other alternative layouts were less dangerous. The situation was of a nature which ordinary minds could comprehend, and the jury could properly pass on whether the defendant exercised reasonable care for its employees' safety. *Lynch v. Republic Pub. Co.,* 40 Wn. (2d) 379, 243 P. (2d) 636 (1952).

■ On the matter of contributory negligence of the plaintiff, the evidence shows that she was engaged in her work duties next to the washbasin at the time of the accident. She was not aware that any of the patients were out

of the room at that early hour in the morning (6 a.m.), and she testified she did not expect that someone in a wheelchair would be entering the room by swinging open the door. We think that the subtleties of the danger due to the hook attached to the door presented a jury question as to whether, in the exercise of reasonable care, she should have been aware of the risk and avoided the harm that resulted.

The judgment is reversed, and the cause is remanded for a new trial with directions to proceed in accordance with the views expressed herein. Costs will abide the final determination of the cause.

FINLEY, C. J., HILL, DONWORTH, WEAVER, ROSELLINI, FOSTER, and HAMILTON, JJ., concur.

OTT, J. (concurring in the result)—I concur in the result. Under the facts of this case, a new trial should be granted, and, upon the retrial, the jury should be instructed that Maria Siragusa assumed the risk of the danger ordinarily incident to the work in which she was engaged, except that resulting from the negligence, if any, of the employer. *Hines v. Continental Baking Co.*, 334 S. W. (2d) 140 (Mo. 1960).

Our adoption of the Missouri rule as stated in *Hines v. Continental Baking Co.*, *supra*, constitutes a modification of the doctrine of assumption of risk in this state. Therefore, the opinion should designate precisely which of the approximately 160 decided cases involving assumption of risk still remain the law of this state, and which are expressly overruled. To hold that we are overruling "The prior decisions of this court, in so far as they are inconsistent with the reasoning and rule we now express," without citing them, will create utter chaos for the bench and bar in their attempt to determine the present status of the law.