[No. 70-40745-3.    Division Three.    February 10, 1970.]

ADOLPH HOFFMAN *et al., Respondents,* v. EUCLID W. GAMACHE *et al., Appellants.*

884

*Kenneth C. Hawkins,* for appellants.

*Arthur Kirschenmann,* for respondents.

Evans, C. J.—Defendants appeal from a judgment awarding plaintiff damages for personal injuries sustained when his hand became engaged in chopper blades in defendants' hop-picking machine.

The machine in question is stationary and housed under a metal roof. It consists of various choppers, recleaners, and conveyor belts having an overall operating length of 175 feet, located on three separate floors. When hop vines are cut in the field they are laid on racks in trucks and hauled to the hop-picking machine, where the vines are lifted vertically off the trucks and hooked onto grasper bars and carried through a picking drum to separate the hops from the vine. The hops so separated fall onto a diamond mesh that separates the single hops from clusters. The vines are then fed into choppers and exited through a series of conveyor belts. The single hops which fall through the diamond mesh are taken by conveyor to a recleaner and then to a kiln. The clusters of hops go through additional choppers until they are separated, recleaned and then fed into the kiln.

The plaintiff, Adolph Hoffman, is a general mechanic of many years' experience, and was self-employed in the auto repair business. For 6 years prior to the accident Hoffman had taken time off from his repair business to work during

the hop harvest as operator of defendants' hop-picking machine, with the help of two assistants.

Plaintiff's employer was the defendant, Euclid W. Gamache, but his immediate boss, and the man who hired him, was Mel Idler, the manager of defendants' hop-picking operations. As manager of the hop ranch, it was Idler's duty to see that the hops were grown, harvested, picked, dried, and marketed. He had the overall supervision of the entire operation, and hired all of the men working on the hop-picking machine. As to Idler's responsibilities in the operation of the machine, he testified that he would discuss the operation of the machine with the mechanics and if there were any problems "they would thresh it out from there." He made occasional inspections of the hop-picking machine to see how it was working, and some of his time was devoted to the supervision of the operation of the machine because, as he testified, this was the most important part of the hop harvesting process. At the conclusion of the harvesting season it was his practice to go over the machine for the purpose of making improvements in its operation for the following year.

In the years prior to the 1965 hop-picking season, Mel Idler noticed that hop vines being carried on one of the conveyor belts in one particular area were piling up and causing the conveyor belt to become clogged. He determined this situation could be corrected by widening the conveyor belt from 36 to 48 inches. In the spring of 1965 he personally supervised the work involved in widening this particular conveyor belt, which passed directly beneath the chopper in which the plaintiff Hoffman later received his injuries. In widening the belt, it was necessary to lengthen the frame upon which the choppers rested. While in dispute, there is substantial evidence from which the jury could find that in the process of widening the belt and lengthening the chopper frame, a protective cover enclosing the chopper was removed and not replaced. Plaintiff Hoffman did not participate in this remodeling work and was not informed the protective cover had been removed.

On the morning of August 27, 1965, plaintiff Hoffman was making his rounds inspecting the various operations of the hop-picking machine, and came to the area where the conveyor had been widened. He stood facing the conveyor belt, which was about waist-high, and was observing an area to his right, where hop vines were coming onto the conveyor belt. He testified that as he was looking to his right he raised his left hand to about eye-level, where it became engaged in the unprotected chopper. Two fingers on his left hand were severed. He testified that this chopper had been completely enclosed in prior years and he was not aware that it had been uncovered. When asked the reason for raising his left hand, the plaintiff could not explain. However, there is evidence from which the jury could conclude that this was an unconscious act on his part while his attention was centered on the conveyor belt operation to his right.

Defendants' first five assignments of error are directed to the trial court's refusal to find plaintiff guilty of contributory negligence as a matter of law. Inherent in defendants' arguments, both regarding the law governing this case and his proposed instructions, is the contention that the defense of assumption of risk as a bar to recovery for the employer's negligence still exists in a case of this nature. In *Siragusa v. Swedish Hosp.*, 60 Wn.2d 310, 373 P.2d 767 (1962), our Supreme Court, at 319, stated:

> The time has now come, therefore, to state unqualifiedly that an employer has a duty to his employees to exercise reasonable care to furnish them with a reasonably safe place to work. We now hold that if an employer negligently fails in this duty, he may not assert, as a defense to an action based upon such a breach of duty, that the injured employee is barred from recovery merely because he was aware or should have known of the dangerous condition negligently created or maintained. However, if the employee's voluntary exposure to the risk is unreasonable under the circumstances, he will be barred from recovery because of his contributory negligence. Knowledge and appreciation of the risk of injury, on the part of the employee, are properly important

factors which should be given weight in the determination of the issues of whether the employer is *negligent* in maintaining the dangerous condition and whether the employee is *contributorily negligent* in exposing himself to it.

*Siragusa* at 320, adopts the Missouri rule as stated in *Hines v. Continental Baking Co.,* 334 S.W.2d 140 (Mo. 1960) that

" . . . *a servant never assumes risks arising from negligence for which the master is liable, but only those which remain after the master has exercised ordinary care.*

" . . .

" . . . *the servant assumes only such risks as are inherent in his work after the master has exercised such care in providing a safe place to work, and within these confines the ultimate fact question is for the jury but under instructions which preserve such limitations. . . .*"

■■ Defendants, however, contend that *Siragusa* does not apply to this factual situation because plaintiff Hoffman had authority to correct any defects which would create a condition of hazard. Defendants misinterpret the facts. A review of the entire record reveals that plaintiff's primary duty was to service, maintain and keep the hop-picking machine in operation. Both he and defendants' general manager, Mel Idler, testified it was essential the hop-picking machine remain fully operative throughout the hop harvest. If the machine were to break down or be stopped for repairs the entire harvest crew would remain idle until the machine was again put in operation. There is nothing in the record to indicate the plaintiff was authorized to modify or improve the machine. Modifications or improvements were customarily made during the off-season under supervision of defendants' general manager, Mel Idler. It was Mr. Idler who supervised the modification in 1965 which involved the removal of the protective cover over the chopper in question. Mr. Hoffman did testify he had authority to correct any unsafe condition which he found in

the operation of the machine but there is nothing in the evidence from which the jury could find this authority was any more than incidental to his main duties as an operator. It requires a distortion of the evidence to seriously contend that because plaintiff testified he had authority to correct unsafe conditions he was, therefore, hired "for the express purpose of making the machine safe." In any event, we do not interpret *Siragusa* and those cases following it to engraft an exception to its rule merely because the employee himself had skills equal or superior to those possessed by his employer, or because he had incidental authority to correct defects. Once negligence on the part of the employer is established,

> The crucial question is not whether the plaintiff's equal or superior knowledge would mean she was contributorily negligent, but whether reasonable minds would differ as to whether or not the plaintiff's conduct was unreasonable in the circumstances.

*Browning v. Ward,* 70 Wn.2d 45, 50, 422 P.2d 12 (1966).

■ The evidence presented a factual question for the jury as to whether the machine, as modified by the general manager, did in fact present a safety hazard to the employee, Hoffman, and whether the danger was such that there existed upon the defendants a duty to warn. *Pichler v. Pacific Mech. Constructors,* 1 Wn. App. 447, 462 P.2d 960 (1969). Whether one charged with negligence has exercised reasonable care is a question of fact for the jury. *Gordon v. Deer Park School Dist. 414,* 71 Wn.2d 119, 426 P.2d 824 (1967).

■ As to the contributory negligence of the plaintiff the crucial question is whether reasonable minds could differ as to whether or not the plaintiff's conduct was unreasonable in the circumstances, *Browning v. Ward, supra,* and unless the facts are such that all reasonable men must draw the same conclusion therefrom, the question of negligence or contributory negligence is for the trier of the facts. *Emanuel v. Wise,* 11 Wn.2d 198, 118 P.2d 969 (1941); *Lish v. Dickey,* 1 Wn. App. 112, 459 P.2d 810 (1969).

We hold that reasonable minds could differ as to whether or not plaintiff's conduct was unreasonable in the circumstances. The trial court did not err in refusing to find the plaintiff guilty of contributory negligence as a matter of law.

Defendants next assign as error the giving of instructions No. 5 and 5-A. Instruction No. 5 embodies the rule in *Siragusa* at 319, quoted previously, and it is unnecessary, therefore, to repeat it. Instruction No. 4-A states:

> I instruct you that an employer owes no duty to the employee to instruct him as to an operation with which he is already familiar.

Both of these instructions were proposed by defendants. They concede No. 5 and 5-A are correct statements of the law but took exception to them on the grounds that they were incomplete and therefore erroneous in the absence of other instructions proposed by the defendants and refused by the court, namely, defendants' proposed instructions No. 5, 6, 13, 17, 19, 20, 21, 22, 23 and 24.

Proposed instructions 5, 6, 19, 20 and 24 would tell the jury, in effect, that if they find plaintiff was hired for the purpose of making the equipment safe, there would be no duty on the employer to protect plaintiff against such hazard. Aside from what has already been said about the contention that plaintiff was hired for the purpose of making the equipment safe, these instructions are defective because they instruct the jury that no duty is imposed upon the employer to exercise reasonable care for his employee's safety. The employer always has a duty to exercise reasonable care for his employee's safety, and will be charged with liability for such failure unless the employee is contributorially negligent.

Proposed instruction No. 13 is taken verbatim from the rule announced in *Focht v. Johnson*, 51 Wn.2d 47, 315 P.2d 633 (1957), and expressly rejected in *Siragusa* at 318.

Proposed instruction No. 23 provides:

> If the plaintiff attempted to remove hop vines or other-

wise check or took care of the clogging situation while the machinery was in operation and was injured thereby, he was guilty of contributory negligence, as a matter of law,

This instruction was properly rejected by the trial court. There is no evidence the employer required the machine to be stopped when hop vines were removed, nor is there evidence that such was the customary safety practice. Further, there is no evidence as to the function plaintiff was performing when the accident occurred. Such an instruction would be based on speculation.

Proposed instruction No. 21 provides:

Although master must furnish servant a reasonably safe place to work, servant cannot recover for injuries where danger or defect is as much open to the servant's view and knowledge as to the master's, for since then the servant has been guilty of contributory negligence.

This instruction is in conflict with that portion of the rule stated in *Siragusa v. Swedish Hosp.*, 60 Wn.2d 310, 319, 373 P.2d 767 (1962), that

if an employer negligently fails in this duty, he may not assert, as a defense to an action based upon such a breach of duty, that the injured employee is barred from recovery merely because he was aware or should have known of the dangerous condition negligently created or maintained. However, if the employee's voluntary exposure to the risk is unreasonable under the circumstances, he will be barred from recovery because of his contributory negligence.

Proposed instruction No. 21 predicates liability on the employee's knowledge and experience, rather than on the question of whether the employee made an unreasonable exposure to a known risk. Knowledge and experience are only factors to be considered, and are not determinative of the issues of the employer's negligence and the employee's contributory negligence. *Browning v. Ward, supra.*

■ Error is assigned to the court's refusal to give defendants' proposed instructions 17 and 22. Instruction 17 sets forth the relative duties of the employer and employee, and instruction 22 relates to contributory negligence by the

servant in placing himself voluntarily in a dangerous position when a reasonable alternative existed. While both these instructions correctly state the law as applied to the case at hand, the court's instructions encompassed these theories, and therefore no error was committed.

> When the instructions given properly cover a party's theory so that he can adequately argue his theory of the case from those instructions, he cannot complain of the failure to give his proposed instructions. *Tyler v. Tyler,* 65 Wn.2d 102, 395 P.2d 1021 (1964).

*Simpson Timber Co. v. Ljutic Indus. Inc.,* 1 Wn. App. 631, 641, 463 P.2d 243 (1969).

We find no error in the instructions given by the court, nor in the failure of the court to give defendants' proposed instructions.

Defendants assign error to the court's failure to set aside the verdict of $22,900 as excessive. The sole basis for this assignment is the amount of the verdict.

Plaintiff testified that as a result of the loss of his index and middle fingers on his left hand he no longer had the dexterity to perform the tasks required of a mechanic. The lack of these two fingers, and the stiffness in those remaining, required plaintiff to attempt to work as a mechanic with only one hand. He testified that performing these duties not only proved frustrating but futile. He could not use his left hand to hold objects such as springs and washers in place while they were secured with his right hand, and to recruit someone for the purpose of assisting him in repairs would be too expensive.

Plaintiff testified that he lost $900 by reason of his inability to complete the 1965 harvest and that he would lose $3,600 per year for the 6 years remaining until he was eligible to retire at age 62. Plaintiff further testified that due to this injury his ability to drive an automobile was impaired, and he was prevented from enjoying his favorite forms of recreation, such as boating, fishing, and hiking. In addition, both plaintiff and his wife testified he suffered a great deal of pain. The test to be applied to the issue of

excessive damages is set forth in the recent case of *Hogenson v. Service Armament Co.*, 77 W.D.2d 209, 461 P.2d 311 (1969), and we deem it unnecessary to set it forth at length herein. There, our Supreme Court concluded that an award of $130,000 was not excessive for the loss of one eye.

We have applied the test set forth in *Hogenson* to the facts in this case and conclude the amount of the award is substantiated by the record. Neither the size of the award nor the record indicates the jury was influenced by passion or prejudice. The amount does not shock our sense of justice and sound judgment.

The judgment is affirmed.

GREEN and MUNSON, JJ., concur.